OPINION
{¶ 1} These are two appeals consolidated for the purposes of this opinion because they deal with the same children, Malachi Reardon, who was born on September 11, 1998, and Mariah Reardon, born September 6, 1999. The children's natural mother Angela Barger and the children's maternal grandparents, Charles and Carla Barger, all appeal from a judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, which terminated Angela Barger's parental rights and gave custody of the two children to Tuscarawas County Department of Job and Family Services.
 {¶ 2} Appellant Angela Barger assigns two errors to the trial court:
 {¶ 3} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO TUSCARAWAS COUNTY JOB AND FAMILY SERVICES AS THE DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} "II. TUSCARAWAS COUNTY JOB AND FAMILY SERVICES FAILED TO SHOW A REASONABLE GOOD FAITH EFFORT TO REUNIFY THE CHILDREN WITH THE MOTHER."
 {¶ 5} The maternal grandparents assigns three errors to the trial court:
 {¶ 6} "I. THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE WEIGHT OF THE EVIDENCE AND THE LAW.
 {¶ 7} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN THIS CASE.
 {¶ 8} "III. THE TRIAL COURT ERRED IN FAILING TO APPOINT INDEPENDENT COUNSEL FOR THE MINOR CHILDREN."
 {¶ 9} The court found certain facts to be true by clear and convincing evidence. Malachi and Mariah are the children of Angela Barger and Melvin Reardon. In 2000, JFS took custody of Mariah and Malachi, as well as Angela Barger's two older children, Curtis and Kayla, when it discovered Melvin Reardon was sexually abusing Curtis and Kayla. He is now incarcerated, serving two life sentences. In addition, the mother, Angela Barger, was convicted of two counts of child endangering and sentenced to one year in the Tuscarawas County Justice Center.
 {¶ 10} JFS placed the two older children, Kayla and Curtis in the custody of the maternal grandparents, appellants Carla and Charles Barger. Malachi and Mariah were placed with other relatives, Fred and Becky Romine.
 {¶ 11} In March 2004, for a variety of reasons, Malachi and Mariah were removed from the Romine home and placed in a foster home.
 {¶ 12} Both Malachi and Mariah suffer from disruptive behavior disorder. Malachi exhibits defiant, aggressive, and violent behavior. The court found he has no social skills and could not cope with any children in his class at school. The court found he would hurt other children, and assaulted or ran from any adult who tried to intervene. The court concluded he must have come from an extremely traumatic and unstructured environment. Malachi was retained in kindergarten for a second year, and eventually was placed in a special class to deal with his behavioral problems.
 {¶ 13} The court found Malachi's behavior has routinely worsened just before and just after his visits with his mother. Malachi had to miss school to attend the visits, and he does not like to miss school. The court found it was difficult to determine what caused Malachi's increased anxiety.
 {¶ 14} Mariah was in the Headstart Program and has also sporadically acted out. However, she does not present the drastically violent behavior Malachi does.
 {¶ 15} The court found the children attended a year of counseling. The counselor has seen little improvement in their behavior. The children refuse to communicate their feelings about their parents or their visits with their mother even though they are willing to discuss other aspects of their lives.
 {¶ 16} The counselor testified the children have very special emotional needs. Their therapeutic progress is very slow, and they are likely to need extensive therapy into their adult lives. The counselor opined parenting the children successfully would require extreme patience, insight, and stability; he stated he himself would have difficulty parenting the children despite all his training and experience.
 {¶ 17} The court received a diagnostic psychological assessment Dr. Misra performed in June, 2004. Dr. Misra found Angela has a borderline IQ and does not accept the existence of her own deficits. Angela is likely to blame extrinsic sources for the problems in her life, and Dr. Misra felt she is not likely to learn from her past mistakes. In his opinion, Angela Barger is capable of some progress if conditions are ideal, but her intellectual and cognitive deficits are permanent. In Dr. Misra's opinion, these deficits would place her children at risk in her care.
 {¶ 18} Dr. Ryan Dunn also conducted a psychological assessment of Angela. Dr. Dunn found no pathology or irregularities in her emotional or psychological makeup setting her apart from the average population. He had no serious concerns about her parenting her children. Dr. Dunn opined Angela has learned from her mistakes and is not likely to repeat them.
 {¶ 19} The court found Angela repeatedly resisted all attempts to prevent Melvin Reardon from victimizing her two older children. The court expressed doubt Angela could have made this dreadful mistake with her children and not have any serious emotional pathology to explain her actions. Acknowledging Dr. Dunn was not concerned Angela would repeat her past behavior, the court nevertheless found no real way of measuring this possibility. Even if Angela is capable of learning from her mistakes, the court found in its experience this frequently does not occur, especially when women have been involved with physically or sexually abusive men.
 {¶ 20} The court found Melvin Reardon had previously been convicted of gross sexual imposition of a five year old child. The court found although Angela was repeatedly warned he might harm her older children, she did not protect her children. The court had issued a no-contact order preventing Reardon from having contact with the children, but Angela defied the order of the court and allowed them to be exposed to Reardon. The court found Angela did not believe Reardon had abused the children, and had not terminated her relationship with him until he went to prison.
 {¶ 21} The court found Angela Barger exhibited more emotional stability than she had in the past, and she is much more capable of managing her own life. The court acknowledged various witnesses had testified she had made great progress, but nevertheless the court found Angela's participation in counseling had taught her to verbalize the appropriate attitudes. The court noted it was her third dependency and neglect case, and her progress was late in developing. The court found it had taken 32 years for Angela to finish her GED, and maintain housing and employment.
 {¶ 22} The court found Angela was late for the majority of her visits and failed to consistently follow instructions to maintain structure for the children at the end of her visits. The court also expressed disappointment she showed no insight into her relationship with Melvin Reardon, but blamed JFS for poor case management. She demonstrated no insight into the special needs of her children and the court was not convinced she had gained the ability to protect them. The court found while she was more emotionally composed, she was not any more capable as a parent.
 {¶ 23} The court found the children had not bonded with their mother.
 {¶ 24} The grandparents have custody of Curtis and Kayla, and filed a motion for custody of Malachi and Mariah. The court found by clear and convincing evidence the grandmother had refused to sign release forms to permit JFS to assess the current emotional health of Kayla and Curtis. The court found the information would be used in assessing whether or not the grandparents would be appropriate custodians for Malachi and Mariah. The court found it had no information regarding the grandfather, and he has not appeared in court or shown any interest in the children. The court also expressed concern about Mr. and Mrs. Barger, because they had raised Angela Barger.
 {¶ 25} The court concluded it was not in the best interest of Malachi and Mariah to place them in the custody of the maternal grandparents.
 {¶ 26} The court found Malachi and Mariah could not and should not be placed with either parent within a reasonable time. The court found despite JFS's diligent, reasonable efforts to remedy the problems which caused the removal of the children, both parents have failed continually and repeatedly for a period of six months or more to substantially remedy the conditions causing removal.
 {¶ 27} The court found JFS's case plan addressed the concerns which caused the removal of the children, and offered supportive services for each element of the plan. The court found the parents had demonstrated a lack of commitment towards their children and had failed to provide an adequate home for the children at this time and cannot do so within a year of the litigation.
 {¶ 28} The court found it was in the best interest of the Malachi and Mariah to be placed in the permanent custody of JFS until adoptive homes could be secured.
 {¶ 29} We will address mother's assignments of error first.
 I. {¶ 30} In her first assignment of error, mother argues the trial court's decision was against the manifest weight of the evidence. Mother correctly states a reviewing court will not reverse a trial court's decision to terminate parental rights as being against the manifest weight of the evidence if the record contains sufficient competent and credible evidence from which the court could find the essential statutory elements for termination of parental rights have been established by clear and convincing evidence, C.E. Morris Company v. Foley Construction
(1978), 54 Ohio St. 2d 279; In Re: Forest (1995),102 Ohio App. 3d 338. This court may not weigh the evidence or judge the credibility of the witnesses, because the trier of fact is in a much better position to do so, see, e.g., State v. DeHaas
(1967), 10 Ohio St. 2d 230. Clear and convincing evidence is the amount of evidence necessary to instill in the trier of fact a firm belief or conviction, Cross v. Ledford (1954),161 Ohio St. 469.
 {¶ 31} Mother argues the evidence demonstrates she complied with every one of the case plan requirements, but the trial court disregarded this and chose not to believe the witnesses who testified mother had learned from past mistakes.
 {¶ 32} While it is true a good number of the court's findings of fact relate to mother's failures with her older children, they are certainly relevant for the court to consider in determining whether mother would make the same errors again. The court found she had failed to develop any insight into her own role in the catastrophe that had befallen her family. The trial court found without this insight, mother had not learned from her previous mistakes.
 {¶ 33} The record overwhelmingly shows Malachi and Mariah need an immense amount of special care. The court found mother would not be able to control the behavior of Mariah and Malachi or provide the structure the children need in their lives.
 {¶ 34} The court cited the factors in R.C. 2151.414, in particular R.C. 2151.414 (E)(15) [the parent had allowed the child to be abused or neglected, and the serious, nature or likelihood of the re-occurrence of the abuse or neglect makes the child's placement with the parent a threat to the child's safety]. The court did not cite any other portions of the statute, but used language contained in (E)(4) [the parent had demonstrated a lack of commitment to the child and failed to provide an adequate home for them at the present time and cannot do so within a year]. The court's findings also mirror the language contained in (E) (1) [notwithstanding reasonable case planning and diligent efforts by the agency to assist the parent to remedy the problems which caused the child to be initially placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home].
 {¶ 35} The court found it was in the best interest of Malachi and Mariah to be placed in the permanent custody of JFS. We find the record contains sufficient competent and credible evidence to support this finding.
 {¶ 36} Mother's first assignment of error is overruled.
 II. {¶ 37} In her second assignment of error, appellant mother argues the trial court was incorrect in finding JFS demonstrated a reasonable good-faith effort to reunify the children with her. The trial court found the department had expended diligent and reasonable evidence in case planning, and had developed a case plan which addressed the concerns which had caused the removal of the children. The court found JFS provided supportive services to facilitate the completion of the case plan.
 {¶ 38} Mother urges, and the record supports, she complied with each of the requirements in the case plan. However, the record also indicates mother's efforts were not sufficient to convince the court she had learned enough to be able to cope with the children's needs and make good decisions about their care.
 {¶ 39} Mother's second assignment of error is overruled.
 {¶ 40} We now address the grandparents' assignments of error.
 I. {¶ 41} First, the grandparents argue the court's judgment not to award them custody of the children is against the weight of the evidence and contrary to law. The court expressly found this would not be in the children's best interest. The grandparents argue their home had been investigated and the court had granted them legal custody of the two older children, whom Melvin Reardon had abused.
 {¶ 42} The trial court found the grandmother had refused to sign release forms allowing JFS to assess the current emotional health of the two children in her custody. The court found the information would have been used in assessing whether or not the grandparents would be appropriate custodians for Malachi and Mariah. The court also found the grandfather had not demonstrated any interest in the children.
 {¶ 43} We agree with the trial court information about how Kayla and Curtis are coping would have been very useful in determining whether or not the grandparents would be able to care for two more children who also have very special needs.
 {¶ 44} Further, the grandparents argue the court should have reviewed the interaction and interrelationship of the children with their parents, siblings, and other relatives, and must also consider the wishes of the children.
 {¶ 45} These are all factors contained in R.C. 2151.414. The trial court stated it had considered all the factors listed therein, and is not required to discuss each of the factors individually, see, e.g., In Re: S.B., Cuyahoga App. No. 85560,2005-Ohio-3163.
 {¶ 46} We find the trial court's determination is not against the manifest weight of the evidence or contrary to law. Accordingly, grandparent's first assignment of error is overruled.
 II. {¶ 47} In their second assignment of error, the grandparents argue the court abused its discretion in this case. The grandparents urge the trial court's judgment demonstrates the court had already made up its mind to grant the motion for permanent custody before it heard any evidence. The grandparents also argue the court ignored the report of the guardian ad litem.
 {¶ 48} To reverse a trial court's decision as abuse of discretion, this court must be convinced the trial court's attitude was unreasonable, arbitrary or unconscionable, see, e.g., Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217,450 N.E. 2d 1140.
 {¶ 49} We find the trial court did not abuse its discretion in its conduct of this case.
 III. {¶ 50} In their third assignment of error, the grandparents argue the court should have appointed independent counsel for Malachi and Mariah.
 {¶ 51} In the case of In Re: Williams, 101 Ohio St. 3d 398,2004-Ohio-1500, the Ohio Supreme Court found a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to the proceedings and is entitled to independent counsel in certain circumstances.
 {¶ 52} The record does not indicate any party moved the court to appoint independent counsel.
 {¶ 53} In the Williams case, there was a conflict between the child's repeatedly expressed desire to remain with his mother and the guardian ad litem's recommendation her parental rights be terminated. The Supreme Court found in situations like this, the child has the right to an attorney to zealously represent his or her wishes. The Supreme Court found courts must make a determination on a case by case basis whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child.
 {¶ 54} The record does not disclose any conflict between the wishes of these children and the recommendations of the guardian ad litem.
 {¶ 55} Because the matter was not brought to the court's attention, we must review this assignment under the plain error doctrine. The Supreme Court has held in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, and challenges legitimacy of the underlying judicial process itself, Goldfussv. Davidson (1997), 79 Ohio St. 3d 116, 679 N.E. 2d 1099. In a criminal case, plain error exists only when but for the error, the outcome of the case clearly would have been otherwise. Notice of plain error under Crim. R. 52 must be taken at the utmost caution, under exceptional circumstances, to prevent a manifest miscarriage of justice, State v. Long (1978),53 Ohio St. 2d 91.
 {¶ 56} Under the particular facts and circumstances of this case, we find the trial court did not err in failing to appoint independent counsel.
 {¶ 57} The grandparent's third assignment of error is overruled.
 {¶ 58} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.
Gwin, P.J., Edwards, J., and Boggins, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellant.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed. Costs to appellants.