[Cite as *In re D.N.*, 2011-Ohio-4627.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: [D.N.], | : | |
| | : | |
| Adjudicated Dependent Child. | : | Case No: 11CA3203 |
| | : | |
| | : | |
| | : | <u>DECISION AND</u> |
| | : | <u>JUDGMENT ENTRY</u> |
| | : | |
| | | File-stamped date: 9-09-11 |

APPEARANCES:

Robert W. Bright, Story Law Office, Pomeroy, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Judith Heimerl Brown, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

Kline, J.:

**{¶1}** D.N.'s father (hereinafter the "Father") appeals the judgment of the Ross County Court of Common Pleas, Juvenile Division, which granted permanent custody of D.N. to Ross County Job and Family Services, Children's Division (hereinafter "Children Services"). For various reasons, Father contends that the trial court erred in granting Children Services' motion for permanent custody. But except for plain error, Father has waived all but one of his permanent-custody arguments. In the sole argument that Father has not waived, we find that competent, credible evidence supports the trial court's decision. Furthermore, we cannot find plain error in any of Father's remaining permanent-custody arguments.

**{¶2}** Next, Father contends that the trial court violated D.N.'s right to counsel. Essentially, Father argues that, because of a conflict, the same person should not have served as both D.N.'s (1) guardian ad litem and (2) legal counsel. Again, Father has waived his right-to-counsel argument except for plain error. And because there was no express conflict between the guardian ad litem's recommendation and D.N.'s wishes, we cannot find plain error related to D.N.'s right to counsel.

**{¶3}** Accordingly, we overrule Father's two assignments of error and affirm the judgment of the trial court.

I.

**{¶4}** This is the second time we have reviewed this matter. We affirmed the trial court's termination of D.N.'s mother's parental rights in *In re D.N.*, Ross App. No. 11CA3213, 2011-Ohio-3395.

**{¶5}** D.N. was born on November 22, 1995. After being removed from his parents' home in 2005, D.N. was placed in the legal custody of relatives. In early 2007, D.N.'s relatives informed the juvenile court that they could no longer care for D.N. Children Services then filed a complaint alleging that D.N. was a dependent child.

**{¶6}** On July 5, 2007, the juvenile court appointed the same person to serve as both guardian ad litem and legal counsel for D.N. Then, on October 24, 2007, the juvenile court (1) adjudicated D.N. to be dependent and (2) placed D.N. in the temporary custody of his paternal cousins.

**{¶7}** D.N. remained in his paternal cousins' temporary custody until April 2008. Then, in an April 7, 2008 entry, the juvenile court granted temporary custody of D.N. to Children Services.

{¶8}     Children Services developed a case plan to reunify D.N. with his parents. Under the case plan, Father and D.N.'s mother were to (1) receive treatment for their drug addictions, (2) be tested for drug use, (3) obtain stable housing, and (4) participate in family counseling with D.N.  Unfortunately, neither Father nor D.N.'s mother fulfilled the objectives of the case plan.  For example, D.N.'s father tested positive for cocaine and THC in December 2008, and D.N.'s mother refused to submit to drug testing. Furthermore, after the juvenile court found D.N. to be dependent, both Father and D.N.'s mother were incarcerated for drug-related offenses.

{¶9}     Children Services investigated eight of D.N.'s relatives as potential placement options.  For various reasons, however, Children Services was not able to place D.N. with any of these relatives.  D.N.'s older brother (hereinafter the "Brother") was one of the relatives investigated by Children Services.  But as D.N.'s caseworker later testified, Brother (1) failed two home studies, (2) had financial stability issues, (3) had frequent involvement with law enforcement, and (4) had a positive drug screen.  As a result, Children Services did not approve Brother as a placement option for D.N.

{¶10}     On April 28, 2009, Children Services filed a motion for permanent custody under R.C. 2151.413.  D.N.'s guardian ad litem (also, D.N.'s attorney) recommended that the motion for permanent custody be granted.

{¶11}     On September 20, 2010, the juvenile court held a hearing before a magistrate.  D.N.'s caseworker testified on behalf of Children Services.  Father, Brother, Brother's girlfriend, and D.N.'s mother also testified.  At the close of the hearing, Father's attorney asked the court "to deny the state's motion for permanent custody."

Transcript at 131.  Father's attorney also advocated for D.N. to be placed with Brother.

The magistrate, however, granted Children Services' motion for permanent custody.

{¶12}     On October 1, 2010, the magistrate filed an order that terminated Father's

and D.N.'s mother's parental rights.  D.N.'s mother filed her objections to the

magistrate's decision on November 2, 2010, and Father filed his objections on

November 8, 2010.  But on October 12, 2010, D.N.'s mother also filed a motion for

findings of fact and conclusions of law.  The magistrate responded by entering findings

of fact and conclusions of law on November 23, 2010.  As a result, the trial court

granted both Father and D.N.'s mother until December 28, 2010, to file amended

objections to the magistrate's findings of fact and conclusions of law.  D.N.'s mother

filed her amended objections on December 28, 2010, but Father did not file any

amended objections.  Therefore, Father's November 8, 2010 filing represents Father's

*only* objections to the magistrate's decision.

{¶13}     Despite Father's and D.N.'s mother's objections, the juvenile court adopted

"the order of the Magistrate as the Order of the Court."  January 14, 2011 Judgment

Entry at 4.  As a result, Father's and D.N.'s mother's parental rights were terminated,

and D.N. was placed in the permanent custody of Children Services.

{¶14}     (In his appellate brief, Father has added a "current update to the case[.]"

Brief of Appellant at 7.  Essentially, Father discusses information that is not in the record

before us.  We have not, however, considered any of this information because our

"review is necessarily limited to the record on appeal."  *In re J.C.*, 186 Ohio App.3d 243,

2010-Ohio-637, at ¶15.)

{¶15}    Father appeals and asserts the following two assignments of error: I. "THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY."  And, II. "THE MINOR CHILD WAS DEPRIVED OF HIS RIGHT TO COUNSEL."

II.

{¶16}    In his first assignment of error, Father contends that the trial court erred in granting permanent custody of D.N. to Children Services.

A.

{¶17}    A parent's "interest in the care, custody, and control of [his or her] children 'is perhaps the oldest of the fundamental liberty interests[.]'" *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, at ¶8, citing *Troxel v. Granville* (2000), 530 U.S. 57, 65.  Further, "[p]ermanent termination of parental rights has been described as the family law equivalent of the death penalty in a criminal case."  *In re D.A.*, 2007-Ohio-1105, at ¶10 (internal quotations omitted).  As such, "parents must be afforded every procedural and substantive protection the law allows."  Id. (internal quotations omitted).  "'[I]t is plain that the natural rights of a parent are not absolute, but are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'"  *In re Cunningham* (1979), 59 Ohio St.2d 100, 106, quoting *In re R.J.C.* (Fla.App. 1974), 300 So.2d 54, 58.

{¶18}    "A public or private child-placement agency may file a motion under R.C. 2151.413(A) to request permanent custody of a child after a court has committed the child to the temporary custody of the agency pursuant to R.C. 2151.353(A)(2)."  *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶22.  Once a R.C. 2151.413(A) motion is filed, the court must follow R.C. 2151.414.  Id.

**{¶19}** A trial court may grant the agency's motion for permanent custody if it determines by clear and convincing evidence that: (1) one of the four conditions outlined in R.C. 2151.414(B)(1)(a)-(d) applies; and (2) it is in the child's best interest.  R.C. 2151.414(B)(1); *In re McCain*, Vinton App. No. 06CA654, 2007-Ohio-1429, at ¶13.  The Supreme Court of Ohio has defined "clear and convincing evidence" as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established.  It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases.  It does not mean clear and unequivocal." *In re Estate of Haynes* (1986), 25 Ohio St.3d 101, 104.

**{¶20}** We will not reverse the judgment of the trial court when some competent, credible evidence supports the trial court's findings.  *In re Marano*, Athens App. No. 04CA30, 2004-Ohio-6826, at ¶12.  Accordingly, we must determine if competent, credible evidence supports the trial court's findings regarding both the best interest of the child and the requirements of R.C. 2151.414(B)(1)(a)-(d).

B.

**{¶21}** First, we must address whether Father has waived the arguments under his first assignment of error.  "The juvenile rules require written objections to a magistrate's decision to be filed within 14 days of the decision.  Juv.R. 40(D)(3)(b)(i).  The rules provide that '[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's [adoption] of any factual finding or legal conclusion * * * unless the party has objected to that finding as required by Juv.R. 40(D)(3)(b).'  Juv.R. 40(D)(3)(b)(iv).  This waiver under the rule embodies the long-recognized principle that

the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal. *In re Etter* (1998), 134 Ohio App.3d 484, 492. The objections made under this rule must be 'specific' and must 'state with particularity all grounds for objection.' Juv.R. 40(D)(3)(b)(ii). 'The failure to file specific objections is treated the same as the failure to file any objections.' *In re D.R.*, Butler App. No. CA2009-01-018, 2009-Ohio-2805, at ¶29." *In re D.S.*, Clermont App. Nos. CA2010-08-058, CA2010-08-064, & CA2010-08-065, 2011-Ohio-1279, at ¶31.

**{¶22}** Father has raised four arguments under his first assignment of error: (1) the trial court erred by not placing D.N. with a suitable relative; (2) the trial court did not consider D.N.'s wishes concerning placement; (3) Children Services did not use its best efforts to avoid a judgment of permanent custody; and (4) the trial court erred by not placing D.N. in a planned permanent living arrangement.

**{¶23}** Father, however, raised only one of these arguments with specificity in his objections to the magistrate's decision. In the November 23, 2010 findings of fact and conclusions of law, the magistrate found that "[t]here are no appropriate and willing relatives to care for the child." Magistrate's Decision at 1. And in the proceedings below, Father filed the following objection: "[T]estimony clear[ly] shows that there exist possible family placement alternatives. The very strong bond with the Father, brothers and nephews must outweigh the state's position in permanently severing the biological bond." Objections to Magistrate's Decision at 2. This is the *only* objection in the proceedings below that specifically coincides with Father's arguments on appeal. Therefore, we will use the competent-credible-evidence standard to review Father's

argument that D.N. should have been placed with Brother, and we will analyze Father's remaining arguments for plain error only.

**{¶24}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, syllabus.

1.

**{¶25}** Initially, we will consider Father's argument that the trial court erred by "not placing Child with a suitable relative[.]" Brief of Appellant at 8. On appeal, this particular issue contains *both* new arguments and arguments that Father raised in his objections to the magistrate's decision. Therefore, we will review the following argument under the competent-credible-evidence standard: that the trial court should have placed D.N. with Brother. And we will analyze the following argument for plain error only: that Children Services did not make reasonable efforts to place D.N. with a relative.

a. Placing D.N. With Brother

**{¶26}** Father contends that the trial court should have placed D.N. with a suitable relative. And for that reason, Father argues that the trial court committed reversible error. (In his appellate brief, Father does not refer to a particular suitable relative. We will, however, presume that Father is referring to Brother based on (1) the request made at the September 20, 2010 hearing and (2) Father's objections to the magistrate's

decision.)  Here, we find that competent, credible evidence supports the trial court's decision not to place D.N. with Brother.  After conducting two different home studies, Children Services found Brother's home to be unsuitable for D.N.  Brother also had a positive drug screen, and, as Brother admitted, "the cops are [at his residence] a lot." Transcript at 87.  Because of this competent, credible evidence, the trial court did not err when it determined that placement with Brother was not in D.N.'s best interest.

b. Reasonable Efforts to Place D.N. With a Suitable Relative

**{¶27}**      Father contends that Children Services did not make reasonable efforts to place D.N. with a relative.  And for that reason, Father argues that the trial court committed reversible error.  We recently rejected a similar argument in *In re M.O.*, Ross App. No. 10CA3189, 2011-Ohio-2011.  As we observed, "Contrary to Mother's contention, a public children services agency has no statutory duty to make 'reasonable efforts' to place the child with an extended family member before it can obtain permanent custody of the child."  Id. at ¶16.  See, also, *In re Warren*, Stark App. No.2007CA00054, 2007–Ohio–5703, at ¶23 ("[T]he Department's duty to use reasonable efforts applies only to efforts to avoid removal of a child from her home or to reunify the child with her family, following removal.  The Department is under no statutory duty to make reasonable efforts to place a child with relatives although relative placement is to be investigated.").  Therefore, we find no plain error in Father's reasonable-efforts argument.

2.

**{¶28}** In another argument under his first assignment of error, Father contends that the trial court did not "consider Child's wishes concerning placement[.]" Brief of Appellant at 8. We, however, find no plain error under this argument.

**{¶29}** Under R.C. 2151.414(D)(1)(b), "In determining the best interest of a child * * * the court shall consider all relevant factors, including * * * [t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" And as Father notes, "The failure to consider [this] factor[] in reaching a determination concerning a child's best interest is prejudicial error." *In re J.W.*, Franklin App. Nos. 06AP-864, 06AP-1062, & 06AP-875, 2007-Ohio-1419, at ¶17.

**{¶30}** Here, we find evidence of D.N.'s wishes in the record below. First, D.N.'s caseworker testified that D.N. "never expressed an interest" in living with Father. Transcript at 45. Furthermore, we find evidence of D.N.'s wishes in the guardian ad litem's report. The guardian ad litem reported that he "spoke with [D.N.] and confirmed that he has little attachment to either parent. Whatever bonding [D.N.] may have once had with either of them is simply not there anymore due to the parents pursuing other avenues, including substance abuse, left untreated, and related criminal conduct which has put them behind bars for substantial periods of time." Report of Guardian Ad Litem at 2. In our view, this lack of bonding or attachment is evidence of D.N.'s wishes concerning (1) Father's parental rights and (2) the motion for permanent custody.

**{¶31}** We also presume that the juvenile court considered D.N.'s wishes when it granted permanent custody of D.N. to Children Services. We recognize that neither the magistrate nor the juvenile court made an express finding regarding D.N.'s wishes.

Nevertheless, "[a] general principal of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record." *Tonti v. East Bank Condominiums, LLC*, Franklin App. No. 07AP-388, 2007-Ohio-6779, at ¶26. Because there is no evidence to the contrary, we must presume that the juvenile court considered D.N.'s wishes. Therefore, we find no plain error under Father's wishes-of-the-child argument.

3.

**{¶32}** In another argument under his first assignment of error, Father contends that Children Services did not "use its best efforts to avoid a judgment of permanent custody[.]" Brief of Appellant at 8. Essentially, Father argues that Children Services did not make reasonable efforts to avoid the permanent-custody action. We, however, find no plain error under this argument.

**{¶33}** "Pursuant to R.C. 2151.419(A)(1), 'the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child' must have [']made reasonable efforts to prevent the removal of the child from the child's home, [to] eliminate the continued removal of the child from the child's home, or [to] make it possible for the child to return safely home.'" *In re Gibbs*, Stark App. Nos. 2007 CA 00304 & 2007 CA 00305, 2008-Ohio-1386, at ¶24, quoting R.C. 2151.419(A)(1). Here, Children Services filed for permanent custody under R.C. 2151.413. This is significant because "R.C. 2151.419(A)(1) does not apply in a hearing on a motion for permanent custody filed pursuant to R.C. 2151.413." *In re C.F.*, 2007-Ohio-1104, at ¶43. Furthermore, D.N.'s caseworker testified that Children Services went to considerable

lengths to reunite D.N. with his parents.  Children Services developed a reunification case plan, and D.N.'s caseworker reviewed the case plan with D.N.'s parents.  Unfortunately, D.N.'s parents failed to complete the case-plan objectives.

**{¶34}**     For the foregoing reasons, we find no plain error under Father's reasonable-efforts argument.

4.

**{¶35}**     In the remaining argument under his first assignment of error, Father contends that the trial court erred by "not placing Child in a Planned Permanent Living Arrangement[.]"  Brief of Appellant at 8.  We, however, find no plain error under this argument.

**{¶36}**     "If a child is adjudicated an abused, neglected, or dependent child, the court may * * * [p]lace the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in a planned permanent living arrangement and if the court finds, by clear and convincing evidence, that a planned permanent living arrangement is in the best interest of the child and that one of the following exists:

**{¶37}**     "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like setting and must remain in residential or institutional care now and for the foreseeable future beyond the date of the dispositional hearing held pursuant to section 2151.35 of the Revised Code.

**{¶38}**     "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems,

adoption is not in the best interest of the child, as determined in accordance with division (D)(1) of section 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.

**{¶39}** "(c) The child is sixteen years of age or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living."  R.C. 2151.353(A)(5)(a)-(c).

**{¶40}** Here, there is no evidence that D.N. qualifies for a planned permanent living arrangement.  First, according to the evidence, D.N. does not have "physical, mental, or psychological problems or needs" that would cause him to be "unable to function in a family-like setting."  R.C. 2151.353(A)(5)(a).  Second, there is no evidence that D.N.'s parents "have significant physical, mental, or psychological problems and are unable to care for [D.N.] because of those problems."  R.C. 2151.353(A)(5)(b).  But even if we considered the parents' substance abuse problems to be significant physical, mental, or psychological problems, the evidence does not demonstrate that adoption is not in D.N.'s best interest.  See id.  And finally, D.N. is under the age of sixteen.  See R.C. 2151.353(A)(5)(c).  Therefore, we find no plain error under Father's planned-permanent-living-arrangement argument.

C.

**{¶41}** For the foregoing reasons, we overrule Father's first assignment of error.

III.

**{¶42}** In his second assignment of error, Father contends that D.N. was deprived of his right to independent counsel.  In the proceedings below, D.N.'s guardian ad litem

recommended that permanent custody of D.N. be granted to Children Services. Father argues that the permanent-custody recommendation conflicted with D.N.'s wishes. And because the guardian ad litem also served as D.N.'s attorney, Father argues that the trial court should have appointed independent counsel for D.N.

**{¶43}** This court addressed a similar argument in *In re Hilyard*, Vinton App. Nos. 05CA600, 05CA601, 05CA602, 05CA603, 05CA604, 05CA606, 05CA607, 05CA608, & 05CA609, 2006-Ohio-1965. The following quote from *Hilyard* discusses the legal principles relevant to Father's second assignment of error.

**{¶44}** "R.C. 2151.281 and Juv.R. 4(B) mandate that the juvenile court appoint a guardian ad litem to protect the interests of a child in a juvenile court proceeding involving allegations of abuse or neglect of the child. Under R.C. 2151.352 and Juv.R. 4(A), every child who is the subject of a juvenile court proceeding also has the right to be represented by counsel and, if indigent, to be appointed counsel to represent the interests of the child. *State ex rel. Asberry v. Payne*[,] 82 Ohio St.3d 44, 48[,1998-Ohio-596]; *In re Emery*, Lawrence App. No. 02CA40, 2003-Ohio-2206, [at] ¶9. R.C. 2151.281(H) and Juv.R. 4(C)(1) permit a licensed attorney to serve as both attorney and guardian ad litem for a child in juvenile court proceedings provided the court makes an explicit dual appointment and no conflicts arise due to the dual representation. See *In re Emery*; *In re Duncan/Walker Children,* [(1996), 109 Ohio App.3d 841,] at 844-845. The court expressly ordered dual representation in this case. Thus, we focus on the issue of conflicts.

**{¶45}** "As recognized in Juv.R. 4(C)(1), the roles of guardian ad litem and attorney are not always compatible, as they serve different functions. *In re Baby Girl Baxter*

(1985)*, 17 Ohio St.3d 229, 232[;] *Emery*[.] 'The role of guardian ad litem is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the child's best interest. The role of the attorney is to zealously represent his client within the bounds of the law.' Id. Thus, a conflict between the roles may arise when a child's wishes differ from what the guardian ad litem believes is in the child's best interests. In that event, the attorney must bring potential conflicts to the attention of the court, and where he or she fails to do so, the court may be obliged to act sua sponte. See *In re Howard* (1997), 119 Ohio App.3d 201, 206[.] A new guardian ad litem should be appointed if either the court or the attorney finds there is a conflict. R.C. 2151.281(H); Juv.R. 4(C)(2). * * *.

**{¶46}**      "The Ohio Supreme Court has concluded that a child who is the subject of a juvenile court proceeding to terminate parental rights is entitled to independent counsel *in certain circumstances. In re Williams,* 101 Ohio St.3d 398[,] 2004-Ohio-1500, syllabus[.] A court's determination whether a child actually needs independent counsel should be made on a case-by-case basis, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. *In re Williams*, [at] ¶17; *In re Brooks*[, Franklin App. No. 04AP-164, 2004-Ohio-3887,] at ¶¶79, 87. Generally, the appointment of independent counsel is warranted when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the state. Id." *Hilyard* at ¶34-36 (footnotes omitted) (emphasis sic).

{¶47}    First, we note that Father did not request independent counsel for D.N. during the proceedings below.  Furthermore, Father did not raise the issue of independent counsel in his objections to the magistrate's decision.  Therefore, Father has waived his independent-counsel argument except for plain error.  See *In re Reardon*, Tuscarawas App. Nos. 2005AP080055 & 2005AP040060, 2006-Ohio-629, at ¶55; *In re Johnson*, Franklin App Nos. 03AP-1264 & 03AP-1265, 2004-Ohio-3886, at ¶14.

{¶48}    Here, because D.N. did not express a desire to remain or be reunited with his parents, we cannot find plain error related to Father's second assignment of error.  As we noted earlier, the guardian ad litem reported that D.N. "has little attachment to either parent."  Furthermore, according to D.N.'s caseworker, D.N. "never expressed an interest" in living with Father and "didn't wish to talk" to his mother.  Transcript at 22, 45.  Therefore, the evidence does not demonstrate a conflict between D.N.'s wishes and the guardian ad litem's recommendation, and we cannot find plain error related to the independent-counsel issue.

{¶49}    Accordingly, we overrule Father's second assignment of error.  Having overruled both assignments of error, we affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED.  Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.


Harsha, P.J. and Abele, J.:  Concur in Judgment and Opinion.



For the Court


BY:_____
    Roger L. Kline, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**