[Cite as *Baze-Sif v. Sif*, 2016-Ohio-29.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Sanaa Baze-Sif,                                    :

     Plaintiff-Appellee,                      :

                                               No. 15AP-152

v.                                                 :        (C.P.C. No. 13DR-2661)

Said Sif,                                          :        (REGULAR CALENDAR)

     Defendant-Appellant.                   :

---

D E C I S I O N

Rendered on January 7, 2016

---

*Morgan Law Offices, LLC,* and *Kelly Morgan,* for appellee.

*Bellinger & Donahue,* and *Kerry M. Donahue,* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

HORTON, J.

{¶ 1} Defendant-appellant, Said Sif, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting a divorce to him and plaintiff-appellee, Sanaa Baze-Sif. Said filed a previous appeal in this action, which we dismissed for lack of a final appealable order. *See Sif v. Sif,* 10th Dist. No. 14AP-434, 2014-Ohio-3402. After the prior appeal was dismissed, the trial court proceeded to address the remaining issues before it. The matter is now properly before this court for review. Said assigns the following six errors for our consideration:

> I. THE COURT COMMITTED ERROR BY NOT DETERM[IN]ING THE DIVORCE COMPLAINT FILED IN THIS MATTER TO BE RES JUDICATA AND BY PURPORTING TO RELIT[I]GATE THE SAME DIVORCE A SECOND TIME.

A. IT WAS ERROR NOT TO GRANT APPELLANT'S MOTION FOR DISMISSAL.

II. THE LOWER COURT MISUNDERSTOOD AND THUS MISAPPLIED THE RULE OF COMITY.

III. THE COURT PROCEEDED TO FINAL HEARING ON AN "AMENDED COMPLAINT" THAT WAS IMPROPER IN FORM AND SUBSTANCE AND WHICH WAS NOT PROPERLY SERVED UPON APPELLANT.

IV. THE LOWER COURT HAD NO BASIS IN WHICH TO MAKE A BEST INTEREST OF THE CHILD DETERMINATION.

A. NO VISITATION RIGHTS WERE GRANTED TO APPELLANT FATHER BY THE FRANKLIN COUNTY COURT OF COMMON PLEAS DIVISION OF DOMESTIC RELATIONS AND NO EXPLANATION WAS GIVEN FOR THE ORDER.

V. IT WAS ERROR FOR THE COURT TO ORDER ITEMS PAID FROM HUSBAND[']S MARITAL PORTION OF HIS RETIREMENT ACCOUNT IN AN AMOUNT OVER 50% OF THE MARITAL PORTION TO APPELLEE.

A. THE LOWER COURT DID NOT HAVE SUFFICIENT ADMISSABLE EVIDENCE TO MAKE AN EQUITABLE PROPERTY DIVISION/SETTLEMENT OR AN UNREQUESTED SUPPORT ORDER.

B. THE LOWER COURT COMPLETELY FAILED TO TAKE INTO CONSIDERATION DEBT OR THE PROPERTY DIVISION/SETTLEMENT ORDER ALREADY ORDERED AND PAID IN CASABLANCA, MOROCCO.

C. IT WAS ERROR FOR THE COURT TO ISSUE AN EX PARTE AND UNLAWFUL FORM 1 TO STRS.

VI. APPELLANT WAS DENIED HIS RIGHT TO PRACTICE HIS OWN RELIGIOUS BELIEFS AS ENCOMPASSED BY THE MUSLIM LAW OF THE LAND OF HIS MARRIAGE.

{¶ 2} The first two assignments of error heavily overlap and, therefore, will be addressed together. Both assignments are premised on Said's contention that the trial court should have extended comity to a divorce decree issued by the Kingdom of Morocco.

By way of background, both parties were born in Morocco and grew up there. Said came to the United States in the 1980's to pursue studies at Harvard University and Boston University. In 1999, Said secured employment with The Ohio State University ("OSU") as a professor of molecular biology. Said was employed by OSU until the time of the instant divorce; his 2012 W-2 reflected annual wages of $133,407.57.

{¶ 3} The parties were married on June 7, 2007. Although the parties were married in Morocco, shortly after their marriage they returned to Ohio and established their residence in Dublin, Ohio. On June 21, 2010, Sanaa gave birth to the couple's first child, Anwar. As he was born here in Ohio, Anwar is a United States citizen. In 2011, Said hit Sanaa; she called the police, and Said was charged with domestic violence as a result. Said asked Sanaa to go to Morocco so she would be unable to testify. He told Sanaa he was "sorry," and that he "still love[d]" her. (Sept. 15, 2014 Tr., 21.) Sanaa went to Morocco as he had asked her to do. In 2014, Sanaa became pregnant again. Said told Sanaa to abort the pregnancy, but she refused to do so. (Sept. 15, 2014 Tr., 13-14.)

{¶ 4} In June 2014, Said told Sanaa that they were going to take a trip to Morocco to see their families. The couple was not moving to Morocco, they had round trip tickets. They did not intend to become residents of Morocco, and they never lost their Ohio residency. Nevertheless, the day after their arrival in Morocco, Said filed for divorce in the Moroccan courts, apparently believing that the court's of Morocco would treat him better than the court's here in Ohio where the couple resided. Sanaa "had no idea that [her] husband intended to file for a divorce in Morocco." (Plaintiff's exhibit No. 10, Sanaa's Affidavit, ¶ 3.) Sanaa and Anwar stayed with Sanaa's mother for the remainder of the visit. Sanaa became ill while in Morocco, and when she went to the doctor she discovered that she was in fact pregnant with twins.

{¶ 5} Sanaa participated in one meeting before the Moroccan court, and secured counsel to represent her there. However, she realized that her interests would not be protected before the Moroccan courts. (*See* Jan. 6, 2015 Tr., 33.) As such, Sanaa decided to return home to the United States. When she tried to leave Morocco, however, she realized that Said had "kept Anwar's passport, and he tried to cancel [her] return trip by telling the airline that [she] was ill." (Plaintiff's exhibit No. 10, Sanaa's Affidavit, ¶ 4.) Sanaa informed the airline that she was not ill, and explained that Said had retained

Anwar's passport. Sanaa went to the American Consulate in Casablanca to determine what she should do. Employees there advised her "that [she] should leave [her] son with [her] mother until the passport could be replaced." (Plaintiff's exhibit No. 10, Sanaa's Affidavit, ¶ 5.) Sanaa gave her mother a power of attorney over Anwar, and she left Anwar with her mother and returned to Ohio.

{¶ 6}  Sanaa filed the complaint for divorce in this action on July 15, 2013. She attached an affidavit to the complaint which explained the circumstances surrounding the trip to Morocco, Said's attempts to file for divorce there, and Said's retention of Anwar's passport. Sanaa asked the court to issue an emergency order granting her custody over Anwar, and to order Said to return Anwar's passport or cooperate with the replacement of the passport so that Anwar could be returned to her.

{¶ 7}  Shortly after Sanaa filed for divorce, Said took a leave of absence from OSU and returned to Morocco. Said went to Sanaa's mother's home and said that he would take Anwar "just from 2:00 to 6:00 to see him and then turn him back," but "he never did that." (Jan. 6, 2015 Tr., 11.) Said has never returned Anwar to Sanaa. Sanaa has attempted to contact Anwar, she has "tried to call him," but Said "and his family, they never let [her], you know, talk with [her] son." (Jan. 6, 2015 Tr., 36.) Due to the pregnancy, Sanaa was not medically able to travel back to Morocco to search for her son. She also does not have the funds to afford a plane ticket to Morocco.

{¶ 8}  The Moroccan court issued a divorce decree on December 11, 2013. Said grossly understated his income to the Moroccan court, as he represented that he made $5,400 a month, when his monthly income from OSU was actually $12,000 a month. (*See* Plaintiff's exhibit No. 17.) Sanaa received a small property settlement under the Moroccan decree of approximately $8,000, but the decree did not mention or address the parties' bank accounts or Said's sizeable State Teachers Retirement System ("STRS") account. Although the Moroccan decree provided that Sanaa was to "have first right to the guardianship of her children until they become of age," Said still did not return Anwar to Sanaa. (Plaintiff's exhibit No. 7.)

{¶ 9}  Sanaa gave birth to her twin children on January 30, 2014, at the OSU Medical Center. Said attempted to cancel Sanaa's health insurance at this time. Sanaa testified that, shortly after she gave birth, a woman came into the hospital room and told

her " 'you're not covered with your twins and you have to pay.' " (Sept. 15, 2014 Tr., 45.) Sanaa was "totally shocked." *Id.* Said has never made any effort to see the twins.

{¶ 10} After Said reappeared in this country, Sanaa was able to perfect service on him by way of personal service on January 27, 2014. After service was perfected, Said voluntarily resigned from his teaching position at OSU. Said did not testify in the proceedings below, but he did have counsel present to represent his interests. Sanaa received her United States citizenship on August 13, 2014. She currently supports herself and her children by working at a McDonald's restaurant.

{¶ 11} As noted, Said contends that the lower court erred by refusing to extend comity to the Moroccan divorce decree. Comity is " 'a principle in accordance with which the courts in one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect.' " *Kaur v. Bharmota*, 182 Ohio App.3d 696, 700, 2009-Ohio-2344, ¶ 7 (10th Dist.), quoting *Bobala v. Bobala*, 68 Ohio App. 63, 71 (7th Dist.1940). States are empowered, if they elect to do so, to recognize the validity of certain judicial decrees of foreign governments when they are found by the state of the forum to be valid under the law of the foreign state, and when such recognition is harmonious with the public policy of the forum state. *Yoder v. Yoder*, 24 Ohio App.2d 71, 72 (5th Dist.1970). An Ohio court's recognition of a foreign decree is a matter of courtesy rather than of right. *State ex rel. Lee v. Trumbull Cty. Probate Ct.*, 83 Ohio St.3d 369, 374 (1998). "An Ohio court is not bound to enforce a foreign judgment when it is repugnant to the laws of the United States and Ohio or violates Ohio public policy." *Patel v. Krisjal*, L.L.C., 10th Dist. No. 12AP-16, 2013-Ohio-1202, ¶ 48. *See also Tahan v. Hodgson*, 662 F.2d 862, 864 (D.C.1981), quoting *Hilton v. Guyot*, 159 U.S. 113 (1895).

{¶ 12} The issue of comity " 'is frequently applied in divorce cases; a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity.' " *Kalia v. Kalia*, 151 Ohio App.3d 145, 2002-Ohio-7160, ¶ 37, quoting *Litvaitis v. Litvaitis*, 162 Conn. 540, 544-45 (1972). However, " '[a] decree of divorce will not be recognized by comity where it was obtained by a procedure which denies due process of law in the real sense of the term, or was obtained by fraud, or where the divorce offends the public policy of the state in which

recognition is sought, or where the foreign court lacked jurisdiction.' " *Id.* quoting *Litvaitis.* We review a trial court's decision to grant or deny comity under an abuse of discretion standard. *Patel* at ¶ 46.

{¶ 13} The trial court did not abuse its discretion by refusing to extend comity to the Moroccan divorce decree. The court noted that the Moroccan divorce decree offended the public policy of this state regarding the division of marital assets, as it contained no discussion of the parties' marital assets or debts, and did not address Said's retirement account. Said also grossly understated his monthly income to the Moroccan court. The trial court also concluded that, as neither party contended "via testimony or in any briefs filed in this action, that Said or Sanaa were residents of Morocco," and since they were not "bona fide residents of Morocco, the Moroccan Court lacked subject matter jurisdiction over the parties when Said ambushed Sanaa with the petition for divorce during their vacation." (Decree, 8.) The trial court noted that the parties had been residents of Dublin, Ohio in the six months prior to the filing of the complaint, and that jurisdiction was thus proper here pursuant to R.C. 3105.03.

{¶ 14} The trial court also noted that, Morocco and the United States are both participating countries in the Hague Convention, and that the "unrefuted conduct of Said is reprehensible and presents a classic case of unlawful detention of a child" which the "law of this state clearly condemns." (Decree, 9.) Indeed, the domestic relations courts of Ohio are courts of equity, and a party is expected to approach a court of equity with clean hands in order to obtain the relief the party deserves. Said clearly did not approach the lower court with anything approaching clean hands. The trial court's well-reasoned and thorough analysis of the comity issue cannot be improved upon by the court.

{¶ 15} The second assignment of error is overruled.

{¶ 16} Said's first assignment of error asserts that the trial court erred in not finding that Sanaa's complaint for divorce was barred by res judicata. The doctrine of res judicata provides that "[a] valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379 (1995), syllabus. Said contends that the Moroccan divorce decree operates to bar the instant action under res judicata. However, as we find no abuse of discretion in the court's

resolution of the comity question, and Said fails to point to any other legitimate divorce decree in existence between these parties, there is no prior valid, final judgment on the merits which would bar the instant action for divorce. *Compare Lingo v. State*, 138 Ohio St.3d 427, 2014-Ohio-1052, ¶ 25 (res judicata does not apply to void judgments). Moreover, the record before us does not adequately communicate what, if anything, was fully litigated in Morocco.

{¶ 17} The first assignment of error is overruled.

{¶ 18} The third assignment of error asserts that the trial court erred by proceeding to a final hearing on an amended complaint. Initially, Said asserts that he "was not served with the original compliant [sic] in this matter for over 6 months from when it was originally filed." (Appellant's Brief, 49.) Sanaa filed her complaint on July 19, 2013, and service was perfected on Said by way of personal service on January 27, 2014. Civ.R. 4(E) provides that, if "service of the summons and complaint is not made upon a defendant within six months after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed." Said waived any argument he may have had regarding the untimely service, by failing to raise it in his February 5, 2014 motion to dismiss. *See* Civ.R. 12(H). Moreover, Sanaa would have been able to demonstrate good cause for the untimely service, as the delay in service was due to Said's decision to leave this country.

{¶ 19} Sanaa filed an amended complaint on February 6, 2014, without leave. On August 12, 2014, Sanaa filed a motion seeking leave to file the amended complaint. Said filed a memorandum contra the motion for leave on August 18, 2014; however, the trial court granted the motion for leave on August 18, 2014. Sanaa re-filed the amended complaint on August 21, 2014, and the amended complaint was served on Said's attorney pursuant to Civ.R. 5. The amended complaint incorporates the allegations from the original complaint, and notes that Sanaa gave birth to the twins on January 30, 2014. The amended complaint contains a demand for divorce, requests that Sanaa be granted custody of the children, requests permanent spousal support, and asks the court to make an equitable division of the marital property and indebtedness.

{¶ 20} Said filed a motion to strike the amended complaint on August 23, 2014, claiming that the amended complaint failed to state a cause of action. The trial court denied the motion to strike, noting that it was "routine for the court to grant a party leave to file an amended complaint * * * when there is a child (or children) born after the filing of the initial divorce pleadings." (Decision and Entry, 3.) The court further noted that "allowing Sanaa to amend her complaint to include a request regarding the maintenance of the children in no way materially prejudices Said," as the court would have the duty to allocate the parental rights and responsibilities regarding all of the parties' children even if the complaint did not include the later born children. (Decision and Entry, 4.) *See* *Bower v. Bower*, 90 Ohio St. 172, 174 (1914). The court finally noted that, as Said was represented by counsel, service of the amended complaint had to be made on Said's counsel pursuant to Civ.R. 5(B).

{¶ 21} Said asserts that the amended complaint was never served on him. However, the amended complaint did not have to be served on Said, and it was in fact served on his counsel as required by the Civil Rules. Said also asserts that the amended complaint did "properly site [sic] a cause of action." (Appellant's Brief, 49.) This is simply wrong. The amended complaint incorporated all the allegations from the original complaint, and independently asserted causes of action for divorce, custody of the children, spousal support and for division of the property. Said suffered no prejudice from either the form of the pleading of the amended complaint, or in the way the trial court conducted the proceedings with respect to the amended complaint.

{¶ 22} This third assignment of error is overruled.

{¶ 23} The fourth assignment of error alleges that the trial court had no basis on which to determine the best interests of Anwar, and that the trial court erred by not providing Said with visitation rights. Said's contentions again lack merit.

{¶ 24} Trial courts have broad discretion in deciding custody matters. *Davis v. Flickinger,* 77 Ohio St.3d 415, 421 (1997). Appellate courts accord that discretion " 'the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' " *Pater v. Pater,* 63 Ohio St.3d 393, 396 (1992), quoting *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988). This deference is owed because "the trial judge has the best opportunity to view the

demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis* at 418. Under the abuse of discretion standard applicable to appeals of custody matters, " '[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court.' " *Id.,* quoting *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 81 (1984).

{¶ 25} The trial court made a well-reasoned decision with respect to the custody of Anwar, based on the testimony and evidence produced at the trial. The court noted the difficulty it faced in formulating a reasonable parenting plan, as all of Said's efforts in this case had "been directed toward a denial of this Court's jurisdiction over the marriage." (Decree, 11.) The court also observed that Said had made no effort to assert any parental rights to his infant twin children, and that while the Moroccan decree had granted custody of Anwar to Sanaa, Said had "refused to honor that order." (Decree, 11.)

{¶ 26} In making its custody order the court relied on the best interest factors contained in R.C. 3109.04(F). The court specifically noted R.C. 3109.04(F)(1)(f), which asks the court to consider who is "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights." Considering Said's refusal to honor the Moroccan decree's award of custody to Sanaa, Said's retention of Anwar's passport, and his refusal to even let Anwar speak with Sanaa, Sanaa was unquestionably the parent more likely to honor parenting time rights or visitation. The court concluded that, upon consideration of "the relevant factors listed in 3109.04(F), it [was] obvious that the best interests of the children mandate that this Court issue an order granting custody of the three minor children to Sanaa." (Decree, 11.) The lower court acted well within its discretion in making Sanaa the residential parent for the three children.

{¶ 27} Said asserts that the court did not provide him with visitation rights. However, the court provided that Said would be granted parenting time "upon the completion of the Seminar For Divorcing Parents with companionship to commence when he has returned Anwar to Sanaa." (Decree, 12.) The court acknowledged that, while it was "generally reluctant to place strict restrictions upon a parent's exercise of companionship," Said's "wrongful conduct and blatant disregard for his children [made]

the current orders necessary to ensure the safety and best interests of Anwar, Malak, and Maidi." (Decree, 12.) Thus, Said has visitation rights, and his rights will commence once he completes the class and returns Anwar to Sanaa.

{¶ 28} The fourth assignment of error is overruled.

{¶ 29} The fifth assignment of error contends that the trial court erred in the division of marital property. Said asserts that the trial court did not have sufficient admissible evidence on which to make an equitable property division. Said refused to personally participate in the proceedings or to produce discovery, and as a result, the record as to marital and non-marital property was limited. However, Said was represented by counsel throughout these proceedings, and as such he is not in a position to complain that his due process rights were violated. Due process requires an opportunity to be heard but does not mandate that potential evidence be known to the trial court when the party chose not to present it and opted to minimize his participation. Reviewing the record, it is evident that the trial court made a reasonable distribution of the marital property given the evidence before it.

{¶ 30} R.C. 3105.171 provides for the division of marital property in a domestic relations case, and R.C. 3105.171(C)(1) requires that the division of marital property be equal unless an equal division would be inequitable. The court must "determine what constitutes marital property and what constitutes separate property," and then "divide the marital and separate property equitably between the spouses" and disburse a spouse's separate property to that spouse. R.C. 3105.171(B); R.C. 3105.171(D). A domestic court has broad discretion to make divisions of property. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998), citing *Berish v. Berish*, 69 Ohio St.2d 318 (1982). An appellate court's job is not to reweigh the evidence but to determine whether competent, credible evidence in the record supports the trial court's findings. *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, ¶ 27 (10th Dist.). A trial court's valuation and division of property will be affirmed absent an abuse of discretion. *Colley v. Colley*, 10th Dist. No. 09AP-333, 2009-Ohio-6776, ¶ 17.

{¶ 31} Said contends that the court erred in its division of the bank accounts. Sanaa testified that during the marriage her husband had a checking and a savings account at Chase Bank. Pursuant to subpoena, Chase Bank produced the records of Said's

accounts. (*See* Plaintiff Trial exhibit No. 13.) In June 2013, prior to the parties' trip to Morocco, there was $10,769.76 in the checking account and $118,016.21 in the savings account. However, "within three days of his return to the United States in July 2013, Said withdrew all of the savings account balance, and he further dissipated the checking account balance prior to terminating his employment with The Ohio State University." (Decree, 25.)

{¶ 32} The court concluded that Sanaa's equitable interest in the accounts was $64,393; one-half of the total value of both accounts as of June 2013. The court also acknowledged that Said had paid Sanaa $8,000 pursuant to the Moroccan decree, and concluded that it was fair to assume that the $8,000 "was essentially * * * a partial payment to Sanaa for her equitable interest in the Chase account funds." (Decree, 25.) Accordingly, the court deducted the $8,000 payment from the $64,393. We find no error in the court's division of the accounts.

{¶ 33} Said argues that the court failed to divide a $17,000 debt. At trial, defendant presented exhibit Y, which demonstrated that in 2014 Said owed $17,659.05 on a Chase credit card debt. However, Sanaa testified that she never had a credit card during the marriage and that she was unaware of any indebtedness of the parties. As such, the court ordered that Sanaa was to "assume, pay, and hold Said harmless on indebtedness incurred solely by her," and ordered Said to "assume, pay, and hold Sanaa harmless on indebtedness for the JPMorgan Chase credit card and any other indebtedness incurred solely by him." (Decree, 28.) We find no error in the court's distribution of the indebtedness of the parties.

{¶ 34} Said finally asserts that the trial court made an "unlawful order * * * to disburse over 50% of the marital portion of a parties' retirement account." (Appellant's Brief, 56.) At the trial, Rebekah Smith, CPA, testified regarding the marital portion of Said's STRS account. Ms. Smith testified that the marital portion of the retirement account was $236,431.44, and that Sanaa's one-half marital interest in the account was $118,215.72. (*See* Jan. 6, 2015 Tr., 55, 58.) STRS records demonstrated that account withdraw value was $286,713.37. (*See* Plaintiff's exhibit No. 15.) The court observed that, pursuant to R.C. 3105.81 to 3105.85, it could order a distribution from a STRS participant's retirement account, not to exceed fifty percent. *See* R.C. 3105.85(A).

{¶ 35} Notably, Said ceased his employment with OSU in February 2014, and "attempted to withdrawal his account value but could not because of th[e] Court's Restraining Order." (Decree, 26.) As Said voluntarily ceased his employment with OSU, and "a participant who is no longer in the public employment in Ohio is entitled to elect a lump sum distribution of the retirement benefits," the court ordered that the entire lump sum benefits were to be distributed. (Decree, 27.) The court further ordered that, "[f]rom the account value shall be deducted the arrearages in child support that shall be payable as a lump sum pursuant to a withholding order. From the remaining account value Said and Sanaa shall each be entitled to fifty (50%) percent." (Decree, 27.) Said had child support arrearages of $29,627.00 at the time the court issued the decree. (*See* Decree, 18.)

{¶ 36} The court's distribution of the retirement account was permissible. Initially, the court ordered that the child support arrearages be deducted from the lump sum. The child support arrearages that Said was obligated to pay for the well-being and support of his children were not part of the property division, and considering Said's refusal to comply with court orders with respect to his children, the court's deduction of the arrearages from the account value was reasonable under these circumstances. Thus, the resulting account value after the deduction of arrearages was $257,086.37 ($286,713.37 - $29,627.00). One-half of that figure is $128,543.19.

{¶ 37} Although this number is slightly higher than Sanaa's marital portion of the account, it is less than 50 percent of the total withdraw value, and therefore permissible. *See Cunningham v. Ohio Police & Fire Pension*, 175 Ohio App.3d 566, 2008-Ohio-218, ¶ 9 (8th Dist.) (noting that "R.C. 3105.85(A) operates as a substantive limitation on the maximum amount that can be distributed to an alternate payee and constitutes a legal requirement that at least 50 percent of a pension is distributed directly to the member whose service created the pension entitlement"). The court also noted that any additional distribution to Sanaa was "fair and equitable upon consideration of the vast disparity in earning capacity of the parties as well as Defendant's lack of cooperation in failing to disclose the assets that he removed when the parties separated, in refusing to complete discovery, and in otherwise failing to cooperate with the division of the marital assets." (Decree, 27.) Indeed, with respect to the division of marital property, "[e]quitable need

not mean equal." *Cherry v. Cherry*, 66 Ohio St.2d 348, 355 (1981). The trial court made an appropriate and equitable division of the STRS account.

{¶ 38} The fifth assignment of error is overruled.

{¶ 39} The sixth assignment of error alleges that, because the trial court failed to extend comity to the divorce decree entered in Morocco, the court denied Said his right to practice his religious faith. Said fails to explain how the court's resolution of the comity issue prevents him from practicing his faith. The trial court in no way denied Said his right to practice his religion. The sixth assignment of error is overruled.

{¶ 40} Having overruled the six assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

KLATT and LUPER SCHUSTER, JJ., concur.

_____