[Cite as *Sargsyan v. Martirosyan*, 2021-Ohio-4576.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Sergey Sargsyan, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 21AP-2 |
| v. | : | (C.P.C. No. 18DR-3012) |
| Gayane Martirosyan, | : | (REGULAR CALENDAR) |
| Defendant-Appellant | : | |

D E C I S I O N

Rendered on December 28, 2021

**On brief:** *Trolinger Law Offices, LLC*, and *Christopher L. Trolinger*, for appellant. **Argued:** *Christopher L. Trolinger*.

**On brief:** *Sergey Sargsyan*, pro se. **Argued:** *Sergey Sargsyan*.

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

KLATT, J.

{¶ 1} Defendant-appellant, Gayane Martirosyan, appeals from a judgment entry-decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm that judgment.

{¶ 2} Appellant and plaintiff-appellee, Sergey Sargsyan, were married on July 27, 1999 in Yerevan, Armenia. The parties immigrated to the United States that same year; one child, a son, was born of the marriage.[1] In 2002, the parties immigrated to Canada and

---

[1] The son, born May 10, 2001, was emancipated at the time of trial.

resided together until appellee moved out in November 2008. On July 28, 2009, appellant filed what she captions in her merit brief as an "Application for corollary relief"[2] in the Superior Court of Justice Family Court Branch in Ontario, Canada. That filing included appellant's averment that the parties had "lived separate and apart since November 1, 2008." Appellant sought spousal support, sole custody of the parties' minor child, child support, and property equalization. *Id.*

{¶ 3} On February 24, 2011, the Canadian court entered an order granting the parties joint custody of their son and obligating appellee to pay child support and spousal support to appellant retroactive to January 1, 2009; the order did not divide the marital estate nor grant the parties a divorce. In October 2013, appellant purchased a home in Canada. Appellant tendered a fairly substantial down payment and obtained a mortgage. Appellee's name was not on the purchase documentation or the deed.

{¶ 4} In July 2017, appellee and the parties' son moved to Columbus, Ohio. Appellant remained in Canada and sold her home in September 2017. Following satisfaction of the mortgage, appellant realized a profit from the sale. Appellant did not split the net proceeds with appellee; rather, she used the proceeds to purchase a home in Columbus.

{¶ 5} On August 6, 2018, appellee filed a complaint for divorce, designating September 13, 2017 as the date the parties separated. Appellant answered the complaint on September 7, 2018, listing October 2008 as the date of separation; she did not file a counterclaim. On December 10, 2018, the parties appeared pro se before the trial court. During that proceeding, the parties inquired about the procedures involved in enforcing the Canadian child support and spousal support orders and indicated their desire to obtain a divorce. When questioned about their real estate holdings, appellee averred that he owned no real estate; appellant stated that she sold her home in Canada and purchased one in Columbus. Upon ascertaining that neither party planned to retain counsel, the trial court informed them that the domestic court's self-represented resource center could aid them in drafting a divorce decree for subsequent approval by the court once they agreed on the terms of the divorce.

---

[2] Appellant's Brief at 2.

{¶ 6} Despite subsequent mediation efforts, the parties could not agree on the terms of the divorce, and the matter was set for contested trial on July 8, 2019. On July 5, 2019, appellant, pro se, moved the court to find November 1, 2008 as the de facto date of termination of the marriage. Trial commenced on July 8, 2019 and continued for three additional days in July and August 2019; both parties appeared pro se.

{¶ 7} At trial,[3] appellee testified on direct examination by the trial court that he lived with appellant in Canada until he moved to Columbus in July 2017. However, on cross-examination by appellant, he admitted that he left the marital residence in 2008 and did not move back until the summer of 2012. After appellant sold the Canadian home, she moved to Columbus in September 2017 and purchased a home with the proceeds from the sale of the Canadian home; appellant did not split the proceeds with appellee. Appellee executed a quit claim deed allowing appellant to purchase the Columbus home. The parties had not cohabited in Columbus and had separate bank accounts. Accordingly, appellee considered their separation date to be September 2017.

{¶ 8} When questioned by the trial court about the Canadian proceedings, appellee averred that "[t]here was no separation agreement. The agreement was only about support payments. Because we temporarily separated and [appellant] filed for support payments [and] the court granted those support payments. And then we started living together again, but she was still getting support payments." (July 8, 2019 Tr. at 6.) He further testified that he saw no reason to go back to court because the parties were living together and appellant "was comfortable" with receiving the support payments. *Id.* at 8. On cross-examination, appellee averred that he did not object to the support payments because "they were going towards the house we were living in." (July 12, 2019 Tr. at 125.) Appellee averred that he did not consider the marriage irretrievably broken after he and appellant separated in 2008; however, he admitted that he had multiple sexual relationships with other women from 2008 to 2017.

---

[3] At trial, appellant questioned appellee about his statement at the December 10, 2018 proceeding that he would not request an award of one-half the equity in the house. Appellee testified that he made that statement based upon appellant agreeing to terminate the spousal support and child support payments; when appellant did not agree, the division of assets, including the equity in the home, became one of the contested issues at trial.

{¶ 9}  Appellant testified that she and appellee "separate[d] officially" on November 1, 2008, when appellee moved out of their residence; at that point, the marriage was "irretrievably broken."  (July 8, 2019 Tr. at 18, 28.)  There was no "mutual agreement" to separate; rather, appellee "just left."  *Id.* at 19.  She filed for what she characterized as a "divorce" in 2009 and was granted what she described as a "legal separation" in 2011, pursuant to which she was awarded child support and spousal support.  *Id.* at 21.  She did not return to court to obtain a divorce because she was satisfied with the support payments. Appellant purchased her home in Canada in October 2013; the down payment derived from support payments she received from appellee, funds she withdrew from her retirement account, and cash she received from her mother. According to appellant, under Canadian law, appellee was not required to sign documentation regarding the purchase because the parties were legally separated at that time.  (Aug. 7, 2019 Tr. at 176-77.)  Appellant averred that she paid for all expenses related to the home, including the mortgage, real estate taxes, utilities, and maintenance.

{¶ 10} In response to the trial court's questioning about when she and appellee stopped living together in Canada, appellant stated, "[o]n separation date, November 1, 2008."  (July 12, 2019 Tr. at 76.)  Appellant later averred that appellee and his mother moved into her house in December 2013 while she was visiting her mother in Moscow. When the trial court asked "[s]o he and his mother both lived with you * * * in the same house," appellant clarified, "[n]ot with me.  * * * In my house."  *Id.* at 76-77.  Appellant averred that she did not oust appellee and his mother from the house because she did not want to upset her son.  Appellee did not pay appellant rent or contribute financially to household expenses while he and his mother lived in the house.  When she cooked meals for herself and her son, she did not exclude appellee and his mother because she did not want to create a "toxic environment" for her son.  *Id.* at 83.

{¶ 11} Appellant further testified that after November 1, 2008, the parties' relationship was not that of husband and wife; rather, the relationship existed only for purposes of co-parenting their son.  She and appellee made no attempts to reconcile. Appellant averred that she was "not married" to appellee because they did not have intimate sexual relations; in addition, appellee vacationed without her, engaged in sexual relationships with multiple women, and did not contribute financially to the purchase of

appellant's home or household expenses, other than through the support payments made pursuant to the Canadian court order. *Id.* at 93-94. Appellant neither vacationed nor had sexual relationships with other people. Although at times the parties jointly celebrated holidays, holiday celebrations were "[m]ostly separate," as appellee often spent the holidays with family and friends in the United States. *Id.* at 27. After November 1, 2008, the parties never filed joint tax returns and had separate bank and credit card accounts.

{¶ 12} When the trial court again asked appellant how long she and appellee lived separate and apart, appellant responded, "[s]ince 2008." (July 12, 2019 Tr. at 92.) The trial court reminded appellant that she had already testified that she and appellee lived together in the Canadian house; the court then asked, "[s]o when did you actually stop physically residing in the same house?" *Id.* Appellant replied, "June, July 2017. I have no idea. He wasn't staying in my house full-time. You should understand he was taking his separate vacations. He has his own life. He had relations with multiple women * * *. He wasn't husband. He was father of my son." *Id.* at 93. In response to the trial court's admonition that "semantics do not work here. You're either married or you're not married," appellant averred, "[y]ou're not married to somebody who's sleeping with five women and you see those videotapes and you're okay with that * * *. You're not married when you're receiving [spousal] support * * * or child support. You're not married when you're responsible for the mortgage and all expenses. You are not married when you [are] not sharing physical or emotional or any other support. You're not married when you're not making decisions together. You are not married when you're not taking vacations together. You just live together." *Id.* at 93-94.

{¶ 13} Regarding the purchase of her Columbus home, appellant testified that she was "under the impression that we [would] continue the same like we were in Canada; that I will have my separate accounts and expense. He will have separate accounts and expense, and we'll live under same roof for the sake of our child." (Aug. 7, 2019 Tr. at 190.) Appellant admitted that at the time of trial, she continued to receive both spousal support and child support payments from appellee.

{¶ 14} In a judgment entry-decree of divorce entered on December 9, 2020, the trial court denied appellant's July 5, 2019 motion as to the de facto marriage termination date

on grounds that she failed to comply with Civ.R. 6(C)(2).[4]  The court further noted that despite its denial of the motion, it "attempted to have Defendant clarify the separation date of the marriage" during the trial.  (Dec. 9, 2020 Jgmt. Entry-Decree of Divorce at 4.)  The trial court determined the duration of the marriage to be from July 27, 1999 until September 7, 2018, the date appellant answered appellee's complaint for divorce.  The court based its finding "on the testimony that the Parties lived together in the marital residence in Canada until Defendant moved to Ohio and purchased her home in December of 2017." *Id.*

{¶ 15}  In the "Division and Allocation of Marital Property" portion of its judgment, the trial court determined that appellant failed to demonstrate that the home she purchased in Columbus in September 2017 was her separate property.  In so finding, the court noted that appellant "concedes that [ ] the Parties began to cohabitate after they were in the Canadian court where she was awarded child support and spousal support.  Further, the residence was purchased two (2) years after the Parties appeared in the Canadian Court and obtained a legal separation.  Plaintiff not only returned to live with Defendant, he brought his mother to live with them as a family."  *Id.* at 5.  The court further found, "Defendant further testified that funds from Plaintiff's child support, spousal support, and the Parties' earnings during cohabitation were used in purchasing the Canada home in 2013.  The Parties continued to reside together with Plaintiff coming to Ohio in September of 2017 and Defendant coming to Ohio in October of 2017."  *Id.* at 5-6.  The court also found that appellant failed to support her claim that a portion of the down payment on the Canadian home derived from cash payments she received from her mother and/or funds she extracted from her retirement account.

{¶ 16}  The trial court concluded that because portions of the down payment used to purchase the Columbus home derived from the sale of the Canadian home, the equity in the Columbus home was marital in nature.  The court ordered appellant to pay appellee 50 percent of the net proceeds of the sale of the Canadian home within 60 days of the judgment

---

[4] The trial court found: "Civil Rule 6(C)(2) requires, 'A written motion for purposes of trial shall be served no later than twenty-eight (28) days prior to the start of trial.'  Here, Defendant's *Motion* was filed a mere three (days) before the start of trial.  Defendant's *Motion* for *de facto* Date for Termination of Marriage fails to comply with Ohio Civil Rule 6."  (Emphasis sic.)

entry; the court awarded appellant the Columbus home free and clear of all claims of appellee. The court divided the parties' remaining property in accordance with law.[5]

{¶ 17} In a timely appeal, appellant assigns the following five errors for review:

[I]. The trial court erred as a matter of law and abused its discretion by failing to apply Ontario Canada's family law act to the parties' separation and circumstances under comity and equity.

[II]. The trial court erred as a matter of law and abused its discretion in failing to establish a de facto termination date of marriage of November 1, 2008 for purposes of R.C. 3105.71.

[III]. The trial court erred as a matter of law, abused its discretion and found contrary to the manifest weight of the evidence that the duration of the marriage was from July 27, 1999 until September 7, 2018 instead of November 1, 2008.

[IV]. The trial court erred as a matter of law and abused its discretion by failing to consider and make findings regarding the relevant factors contained in *Rogers v. Rogers.*

[V]. The trial court erred as a matter of law and abused its discretion by ordering that the proceeds from the sale of the Canadian home be split between the parties as such is inequitable.

{¶ 18} Preliminarily, we note that all five of appellant's assignments of error essentially challenge the trial court's determination regarding the duration of the parties' marriage. Appellant maintains that the court should have determined the duration of the marriage to be from July 27, 1999 until November 1, 2008, rather than July 27, 1999 until September 7, 2018. Appellant argues that the de facto termination date of their marriage was November 1, 2008, when appellee initially moved out of the marital residence and the parties effectively ended their marriage. Appellant argues that the trial court's finding that the marriage did not terminate until September 7, 2018 resulted in the erroneous

---

[5] On February 17, 2021, appellee filed a motion for contempt based upon appellant's alleged failure to comply with the court's December 9, 2020 order to pay him 50 percent of the net proceeds from the sale of the Canadian home within 60 days of judgment. On April 1, 2021, the trial court granted appellant's motion for stay pending appeal of the December 9, 2020 judgment relative to the division of property. By magistrate order issued May 12, 2021, appellee's motion for contempt was placed on the court's inactive docket pending the outcome of appellant's appeal and the lifting of the stay.

conclusion that the home she purchased in Canada in 2013 constituted marital property subject to equal division of the net proceeds realized from the sale of that property.

{¶ 19} Appellant's first assignment of error challenges the court's determination regarding the de facto termination date of the marriage based upon principles of comity. Comity refers to an Ohio court's recognition of foreign judicial decisions and is a matter of courtesy, deference, and respect rather than obligation. *Baze-Sif v. Sif*, 10th Dist. No. 15AP-152, 2016-Ohio-29, ¶ 11, citing *State ex rel. Lee v. Trumbull Cty. Probate Court*, 83 Ohio St.3d 369, 374 (1998); *Patel v. Krisjal, L.L.C.*, 10th Dist. No. 12AP-16, 2013-Ohio-1202, ¶ 45. The issue of comity is frequently applied in divorces cases; for instance, a decree of divorce granted in one country by a court having jurisdiction to do so will be given full force and effect in another country by comity. *Baze-Sif* at ¶ 12. "We review a trial court's decision to grant or deny comity under an abuse of discretion standard." *Id.*, citing *Patel* at ¶ 46. An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 20} Appellant contends that the February 24, 2011 order entered by the Canadian court constitutes a judicial determination that the parties were separated on November 1, 2008. Appellant maintains that the trial court abused its discretion by failing to extend comity to that determination and thus find that the de facto termination date of the marriage was November 1, 2008. We disagree.

{¶ 21} As noted above, under principles of comity, an Ohio court may give effect to a foreign judicial order out of deference or respect to the foreign court; however, an Ohio court is not obligated to do so. *Baze-Sif* at ¶ 11. Although the trial court extended comity to the Canadian order with respect to custody, child support, and spousal support issues, the trial court recognized that such order did not grant the parties a divorce and did not divide the marital estate. As those issues were the subject of the Ohio divorce proceeding, the trial court was not obligated to give effect to anything in the Canadian order that may have impacted the Ohio proceeding regarding divorce and property issues. Further, although at trial appellant repeatedly asserted that the February 24, 2011 court order established that the parties were legally separated on November 1, 2008, and she adheres to that theory in her briefing, the order does not include an express determination that the parties were legally separated on November 1, 2008. The order merely obligated appellee

to pay spousal support and child support retroactive to January 1, 2009. Moreover, appellee's testimony contradicted that of appellant; indeed, appellee testified that "[t]here was no separation agreement. The agreement was only about support payments." (July 8, 2019 Tr. at 6.)

{¶ 22} In a related argument, appellant contends that the trial court abused its discretion by failing to review or understand Canadian law regarding the legal circumstances of the parties prior to entering the United States. Relying on her own trial testimony, appellant argues that "Canada recognizes the status of 'separated' without any official court action though such is available," and that "in Canada, her property was her property and no longer 'marital property.' " (Appellant's Brief at 9, 12.) In addition, appellant cites sections of Ontario Canada's Family Law Act pertaining to equalization of property and the definition of "cohabit." *Id.* at 10. However, as noted by the trial court, appellant did not present the court with "any law for [the court] to research." (July 12, 2019 Tr. at 161.) The record in this case substantiates the trial court's statement, as none of the exhibits submitted by appellant support her claims regarding Canadian law. The trial court was not obliged to rely upon appellant's personal understanding and interpretation of Canadian law.

{¶ 23} Based on the foregoing, we conclude that the trial court did not abuse its discretion in failing to find the de facto termination date of the marriage was November 1, 2008 based on principles of comity.

{¶ 24} The first assignment of error is overruled.

{¶ 25} As appellant argues her second, third, fourth, and fifth assignments of error together, we likewise consider them together. Appellant contends that the trial court abused its discretion when it determined the de facto termination date of the parties' marriage to be September 7, 2018 rather than November 1, 2008. Appellant maintains that the trial court's error stems from its failure to consider and make findings regarding the relevant factors contained in *Rogers v. Rogers*, 10th Dist. No. 96APF10-1333, 1997 Ohio App. LEXIS 4033, (Sept. 2, 1997). Appellant further asserts that the trial court's error resulted in an inequitable order that the proceeds from the sale of the Canadian home be split equally between the parties.

{¶ 26}  "The first step in making an equitable distribution of marital property is to determine the duration of the marriage."  *Heyman v. Heyman*, 10th Dist. 05AP-475, 2006-Ohio-1345, ¶ 31.  R.C. 3105.171(A)(2)(a) states that the period to be considered "[d]uring the marriage" is "the period of time from the date of the marriage through the date of the final hearing * * *."  However, R.C. 3105.171(A)(2)(b) provides that "[i]f the court determines that the use of [the final hearing date] would be inequitable, the court may select dates that it considers equitable in determining marital property.  If the court selects dates that it considers equitable in determining marital property, 'during the marriage' means the period of time between those dates selected and specified by the court."

{¶ 27}  As the Supreme Court of Ohio recognized in *Berish v. Berish*, 69 Ohio St.2d 318 (1982), the circumstances of a particular case may make a date prior to the time of the parties' final divorce hearing more equitable for the determination and valuation of marital assets.  In order to achieve equity, "a trial court must be permitted to utilize alternative valuation dates, such as the time of permanent separation or *de facto* termination of the marriage, where reasonable under the facts and circumstances presented in a particular case." (Emphasis sic.)  *Id.* at 321.  In *Rogers,* this court construed *Berish* "to hold that an alternative valuation date should be employed when the totality of the circumstances and equitable considerations between the parties demonstrate that there was a clear and bilateral breakdown of the marriage and the parties have ceased contributing to each other for each other's benefit as would partners in a shared enterprise or joint undertaking." *Rogers* at *19-20.

{¶ 28}  A trial court's determination as to when to apply a de facto termination date of a marriage falls well within the broad discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion.  *Heyman* at ¶ 32.  There are "no flat rules" in choosing a date of valuation, and the date of separation does not automatically demonstrate a de facto termination of a marriage.  *Rogers* at *13, citing *Day v. Day*, 40 Ohio App.3d 155 (10th Dist.1988).  "The court should look beyond merely the date of separation, and look at the actual nature of the parties' relationship." *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 10, citing *Rogers.*

{¶ 29}  After examining cases from various Ohio courts, the *Rogers* court found several common factors to be considered in determining the propriety of declaring a de

facto termination of marriage date. Those factors include, but are not limited to, whether (1) the parties separated on less than friendly terms; (2) the parties believed the marriage ended prior to the hearing date; (3) either party cohabited with any person during the separation; (4) the parties were intimately involved with one another during the separation; (5) the parties lived as husband and wife during the separation; (6) the parties maintained separate residences; (7) the parties utilized separate bank accounts; (8) the parties were not financially intertwined (with the exception of temporary orders); (9) either party attempted to reconcile; (10) either party retained counsel; and (11) the parties attended social functions together or vacationed together. (Citations omitted.) *Id.* at *13-16. "No one factor is dispositive; rather, the trial court must determine the relative equities on a case-by-case basis." *Dill v. Dill*, 179 Ohio App.3d 14, 2008-Ohio-5310 ¶ 11 (3d Dist.).

{¶ 30} As noted above, appellant argues for November 1, 2008, the date appellee initially moved out of the marital residence, as the de facto marriage termination date. The trial court reviewed the evidence presented and rejected appellant's argument based on the parties' testimony that they lived together in the marital residence in Canada until the parties moved to Ohio. The court reiterated its finding in its discussion related to the division of marital assets. Indeed, the court noted appellant's concession that she and appellee cohabited in Canada (along with appellee's mother) after November 1, 2008, and that such cohabitation continued until appellee moved to Ohio in September 2017. The court further noted appellant's concession that the spousal support and child support payments she received from appellee were used in purchasing the Canadian home in 2013 and maintaining it thereafter.

{¶ 31} Appellant argues that the trial court did not consider and make findings regarding the relevant *Rogers* factors in making its determination. Preliminarily, we note that this case involves a trial to the court. "[A] trial judge is presumed to know the applicable law and apply it accordingly." *State v. Dear*, 10th Dist. No. 14AP-298, 2014-Ohio-5104, ¶ 11. However, an appellate court applies de novo review to the extent that an appellant's assignment of error raises a question of law. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 10. Here, nothing in the record suggests that the trial court did not understand the law applicable to a de facto termination of marriage date or misapplied such law.

{¶ 32} Further, to the extent appellant bases her claim on the trial court's denial of her July 5, 2019 motion urging the court to find November 1, 2008 as the de facto marriage termination date, we find such claim without merit. To be sure, the trial court denied the motion as untimely; however, the court indicated in its judgment entry-decree of divorce that it considered appellant's trial testimony regarding the separation date. We have reviewed the trial transcript and conclude that it supports this assertion.

{¶ 33} Moreover, appellant's argument focuses exclusively on her own testimony; indeed, appellant relies on her testimony that after November 1, 2008, the parties' marriage was irretrievably broken, the parties made no attempt at reconciliation, the parties maintained separate bank and credit card accounts and filed separate tax returns, the parties did not engage in intimate relations or live as husband and wife, appellee had numerous sexual partners, appellee maintained a separate residence despite spending the night at appellant's home, and appellant purchased a home in Canada and paid all associated expenses.

{¶ 34} However, appellant does not acknowledge her concession that the parties lived together after November 2008. Although appellant characterized the parties' living arrangement as not one of husband and wife, her testimony on that issue was inconsistent. As noted above, although appellant insisted that the parties separated in November 2008, she admitted that appellee and his mother moved into the Canadian home in December 2013 (two months after she purchased the home) and that she accepted the living arrangement for the sake of her son. When questioned by the trial court about when the parties ceased living in the same house, she responded, "June, July 2017. I have no idea." (July 12, 2019 Tr. at 93.) Regarding the purchase of the Columbus home in 2017, appellant averred that she assumed she and appellee would continue to live together, albeit only for the sake of their child.

{¶ 35} Appellant also fails to acknowledge her concession that appellee's spousal support and child support payments were utilized to obtain and maintain the home in Canada. Although she testified that she paid for all expenses related to the home, including the mortgage, real estate taxes, utilities, and maintenance, she admitted that the down payment for the Canadian home derived, in part, from the support payments she received

from appellee and that she continuously received those support payments; indeed, she averred that she presently received support from appellee.

{¶ 36} The trial court, as trier of fact, was in the best position to assess appellant's credibility regarding the date of separation, the parties' living arrangements, and appellee's contribution to the marital estate. The trier of fact is vested with the authority to weigh the evidence and assess the credibility of the witnesses. *Rogers*, 10th Dist. No. 96APF10-1333, 1997 Ohio App. LEXIS 4033, at * 10, citing *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The trial court was free to believe all, part, or none of appellant's testimony on these issues.

{¶ 37} Appellant also does not acknowledge appellee's conflicting testimony as to the date of separation, the parties' living arrangements, and his contribution to the marital estate. Appellee characterized the November 2008 separation as temporary and averred that the parties lived together in the Canadian home until he moved to Columbus in 2017. Although he admitted to having multiple sexual relationships with other women from 2008 to 2017, he testified that he did not believe his marriage was irretrievably broken after he and appellant separated in 2008. He also averred that the child support and spousal support payments he made to appellant were utilized to pay for the house the parties lived in together.

{¶ 38} Although there may be factors present to support November 1, 2008 as the de facto termination date of the marriage, the trial court's stated findings establish that it determined that the totality of the circumstances and equitable considerations between the parties did not demonstrate that there was a clear and bilateral breakdown of the marriage and that the parties had ceased contributing to each other for each other's benefit. After review of the trial court's decision and the evidence in the record, we cannot say that the trial court's rejection of November 1, 2008 as the marriage termination date was unreasonable, arbitrary, or unconscionable. Further, we reject appellant's suggestion that the trial court's decision to fix the marriage termination date at September 7, 2018 was arbitrary and capricious. The trial court indicated that it chose September 7, 2018 because that was the date appellant filed her answer to appellee's divorce complaint. As appellant has consistently advocated only for November 1, 2008 as the de facto marriage termination date, we fail to see, and appellant does not suggest, how the trial court abused its discretion

in choosing September 7, 2018 as the de facto termination date, and/or how she was prejudiced by that choice.

{¶ 39} Furthermore, we find no abuse of discretion in the trial court's determination that the proceeds from the sale of the Canadian home be split between the parties. As we stated in *Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 14, "[i]t is the duration of the marriage that determines the valuation of the marital estate. Therefore, once the duration of the marriage is established, assets and liabilities are determined in accordance with those dates." Given our determination that there was no abuse of discretion in the trial court's choice of September 7, 2018 as the de facto termination of marriage date, we find no abuse of discretion in the trial court's valuation and division of marital assets in accordance with that date. Accordingly, because the Canadian home was purchased during the marriage, the proceeds from the sale of that home were subject to equitable division, and the trial court did not abuse its discretion in so concluding.

{¶ 40} The second, third, fourth, and fifth assignments of error are overruled.

{¶ 41} Having overruled appellant's five assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN, P.J., and MENTEL, J., concur.

_____