OPINION
{¶ 1} Plaintiffs-appellants, A. Patrick Tonti, Mary Tonti, Wick Tonti, and 5745 Newbank Circle, Inc., appeal from the January 12, 2007 decision and entry of the Franklin County Court of Common Pleas granting defendant-appellee, Carole A. Miller, M.D.'s motion for summary judgment and the trial court's January 19, 2007 decision and entry *Page 2 
granting in part and denying in part the summary judgment motion of defendants-appellees East Bank Condominiums, LLC, The East Bank at Hayden Falls Condominium Association, LW/EBI, LLC, Rae Co. Development, LLC, and James Howe (collectively "East Bank"). For the reasons that follow, we affirm.
 {¶ 2} The following facts are taken from the pleadings, the parties' motions for summary judgment, the responses thereto, depositions on file, exhibits, and the transcript of proceedings in the trial court. For purposes of deciding this appeal, we view the facts in the light most favorable to appellants.
 {¶ 3} This case arose out of complaints by A. Patrick Tonti and Mary Tonti of excessive noise emanating from the condominium directly overhead from the condominium in which the Tontis reside. The Tontis currently reside in Unit 305 at 5745 Newbank Circle, and defendant-appellee Carole A. Miller, M.D. and her wheelchair-bound 94 year-old mother resided in Unit 405 at the same address. While Dr. Miller continues to reside in Unit 405, her mother passed away during the course of this litigation.
 {¶ 4} The Tontis had lived in a single family home for approximately 50 years of their married life but, in 2003, Mary Tonti was experiencing health problems. Their adult son, plaintiff-appellant Wick Tonti, advised his mother that it was time for his parents to move from their single family home. After several unit inspections, Wick, a licensed real estate broker in Hawaii, negotiated on behalf of his parents to purchase Unit 305 at the East Bank Condominiums. On May 13, 2003, Wick entered into a condominium purchase agreement and, on September 18, 2003, East Bank executed and delivered a deed transferring title to Unit 305 to 5745 Newbank Circle, Inc. The deed was recorded on September 23, 2003. Patrick, Mary, and Wick Tonti are shareholders in 5745 *Page 3 
Newbank Circle, Inc., but Patrick and Mary Wick have never, as individuals, owned title to Unit 305. In addition, they have never leased the premises. Wick occupied the condominium from approximately February 2004 until April 2004. The purchase was to be a surprise to Patrick Tonti. In May 2004, Mr. and Mrs. Tonti moved into Unit 305.
 {¶ 5} More than a year earlier, Carole Miller and her mother had moved into Unit 405 in February 2003. Dr. Miller was the first owner to move into the building at 5745 Newbank Circle. Dr. Miller's mother, Elsa, suffered from severe arthritis which impaired her ability to operate her wheelchair on carpet. As a condition for purchasing the condominium, Dr. Miller expressly stipulated that the developer install hardwood floors to allow her mother mobility. No East Bank representative and no written documents indicated that hardwood floors were not permitted.
 {¶ 6} The appellants' condominium had wall-to-wall carpet installed throughout much of the unit, and Mary Tonti selected the color of the carpet. The sales brochure provided to appellants stated that luxury features in the condominiums included "hardwood floors in kitchen and dinette." The floor plan indicated that the powder room and coat closet also would have hardwood floors, and the two baths would have tile flooring. Wick Tonti was informed of the hardwood flooring that was installed in the units. The floor plan included the following language: "In a continuous effort to improve our product, the developer reserves the right to change specifications, equipment, features, dimensions, prices or plans without notice." (Floor plan attached to affidavit of Kenneth E. Wilson, Jr.)
 {¶ 7} The Tontis complained of noises described as "thumps," "bumps," and "moving sounds" taking place "24/7" from the time they moved into Unit 305. The noises *Page 4 
they found objectionable related to the day-to-day life of Dr. Miller and her mother, including turning on a bathroom fan, running a vacuum cleaner, walking, moving a dining room chair from under a table, playing the piano, and other commonplace day-to-day activities. The Tontis attributed the noise problem to the hardwood flooring in Unit 405 conducting sound in a way that carpeted floors would not.
 {¶ 8} Mrs. Tonti related that in July or August 2003, after Wick had signed the purchase agreement, but before closing, she paid a visit to the partially constructed but substantially complete condominium. On that visit, Mrs. Tonti asked defendant-appellee, James Howe, "What can you tell me about the noise coming into this unit?" (Complaint, at ¶ 17.) Mr. Howe answered, "We have had workers in adjoining units yell and scream as loud as they can, pound, jump up and down, and the people in this unit could not hear anything." Id.
 {¶ 9} Wick testified that he inquired about noise, and Mr. Howe advised him that he could hear noise from the hallway if he were in the dining area, but that he would not hear any noise from the adjoining units. (Wick Tonti depo., at 32-34.) Despite inspecting not only Unit 305, but other units as well, Wick negotiated an addendum to the purchase agreement that did not address the noise issue in any way. However, the addendum contained a number of items that he apparently thought were material as he wished East Bank to address them. These items included exchanging the granite kitchen counter top, changing the existing kitchen cabinets, and painting existing interior doors.
 {¶ 10} The Tontis attempted to negotiate a solution to the noise problem on their own, but eventually retained an attorney to attempt to resolve the problem with East Bank and Dr. Miller. In November 2004, the Tontis met with Dr. Miller and representatives of *Page 5 
East Bank. Several options were discussed, including having Dr. Miller exchange her unit for one that was on the ground floor of a new building. The parties dispute whether they ever reached agreement on a settlement.
 {¶ 11} On September 16, 2005, appellants filed their complaint against East Bank alleging fraud, nuisance, enforcement of condominium declaration, breach of implied duty in tort regarding noise, breach of implied duty in contract regarding noise, breach of implied duty in tort regarding other defects, breach of implied duty in contract regarding other defects, and breach of an alleged settlement agreement. The complaint alleged nuisance, breach of condominium declaration, and breach of a settlement agreement against Dr. Miller.
 {¶ 12} After contentious discovery, appellees moved for summary judgment. The trial court granted Dr. Miller's motion in its entirety, and granted East Bank's motion with respect to all claims but one for breach of contract relative to other defects in Unit 305.
 {¶ 13} With respect to summary judgment in favor of Dr. Miller, the trial court reasoned that the nuisance claim and the claim of violation of condominium bylaws prohibiting noxious or offensive activity were highly subjective. Mary Tonti had testified in her deposition that a nuisance existed even when there is only "one noise every day." (Mary Tonti Depo., at 128.) The trial court found that there was no evidence from anyone other than appellants and their expert about excessive noise from Unit 405. The trial court noted that all the parties (including appellants' expert) agreed that the general building code standard for sound control was met by Dr. Miller's hardwood floors. The trial court could not accept appellants' expert opinion that some subjective unpublished noise standard for luxury condominiums had been violated by the use of hardwood floors *Page 6 
instead of carpet and pad, when the only objective noise standard anyone cited to had been met. In other words, appellants' expert could not create a genuine issue of material fact merely by stating that, in his opinion, the noise levels in the Tonti unit exceeded his personal standard. The trial court also discounted argumentative and sarcastic statements contained in Wick Tonti's affidavit.
 {¶ 14} The trial court noted that the sales literature provided to appellants indicated that there would be hardwood flooring in some areas of all the condominiums. The trial court observed that there was no evidence in the record suggesting how one could differentiate between the noise level that would be heard in Unit 305 if Unit 405 had only hardwood in her kitchen, dinette, and other areas where hardwood was advertised, as opposed to noise when hardwood flooring was used over essentially all of Unit 405.
 {¶ 15} The trial court concluded that Dr. Miller moved into her unit first and used hardwood floors before appellants appeared on the scene; that the noises complained of were the noises heard by everyday residential living; that hardwood flooring was disclosed in the sales literature; that there is no recognized objective standard indicating that the noise created by Dr. Miller and her mother is excessive; and that Wick Tonti, a realtor himself, lived for some time in the lower unit without complaining about the noise from above.
 {¶ 16} With respect to the East Bank defendants, the trial court determined that Wick Tonti's parents had no direct legal rights to assert in the claims of fraud and breach of contract.
 {¶ 17} Appellants dismissed the one remaining claim without prejudice, and this appeal followed. *Page 7 
 {¶ 18} Appellants have asserted the following assignments of error:
 1. The Trial Court erred to the detriment of the Plaintiffs-Appellants by granting the Defendants-Appellees' Motions for Summary Judgment when there were genuine issues of material fact.
 2. The Trial Court erred to the detriment of the Plaintiffs-Appellants by using the wrong standard in granting the Defendants-Appellees' Motions for Summary Judgment.
 3. The Trial Court erred by failing to construe the evidence most strongly in the Plaintiffs-Appellants' favor, the non-moving party, as required by Civil Rule 56(C).
 4. The Trial Court showed prejudice against the Plaintiffs-Appellants by taking judicial notice that one of the Plaintiffs in the instant case was allegedly sanctioned in a totally unrelated case and placing the "judicial notice" in a Journal Entry of July 26, 2006.
 5. The Trial Court erred to the detriment of the Plaintiffs-Appellants by granting the Defendants-Appellees' Motions for Summary Judgment on the issues of fraud.
 6. The Trial Court erred in dismissing the Plaintiffs-Appellants, A. Patrick Tonti and Mary Tonti, from the law suit.
 7. The Trial Court improperly dismissed all of the Plaintiffs' claims in its Decision granting the Defendant, Carol Miller's, Motion for Summary Judgment and in granting in part and denying in part Defendant, East Bank Condominiums, et al., Motion for Summary Judgment, all to the detriment of the Plaintiffs-Appellants.
 {¶ 19} For ease of discussion, we elect to discuss the assignments of error out of order.
 {¶ 20} Assignment of error four raises an issue that is outside the jurisdiction of this court. We construe this assignment of error to be a claim that the trial judge was biased or prejudiced. This court is not the appropriate forum for such a determination as *Page 8 
the Supreme Court of Ohio is the proper venue for such complaints. Section 5(C), Article IV, Ohio Constitution; R.C. 2701.03. See, e.g.,Beer v. Griffith (1978), 54 Ohio St.2d 440 (per curiam). It should also be noted that no affidavit of prejudice was filed after the trial court's July 26, 2006 journal entry was filed. The fourth assignment of error is not well-taken.
 {¶ 21} Assignments of error two and to a lesser extent one, three, five, and seven, all contain an overriding issue that appellants assert adversely affected the determination of the trial court. Appellants argue that the trial court applied the wrong standard to the motions for summary judgment, that it substituted its own judgment on issues of fact, and that it failed to construe the evidence most strongly in favor of appellants.
 {¶ 22} In support of this argument, appellants point to a statement on page 5 of the January 12, 2007 journal entry granting defendant Miller's motion for summary judgment in which the trial court considered the issue of nuisance. The trial court stated:
 Factually the evidence must be analyzed, given the benefit of reasonable inferences to the plaintiffs, from the standpoint of whether "the owner's enjoyment of life and property is rendered uncomfortable" from the standpoint of "what persons of ordinary tastes and sensibilities would regard as an inconvenience or interference materially affecting their physical comfort. * * *"
 {¶ 23} Appellants claim this standard violates the well established standard for summary judgment set forth in Civ.R. 56(C). We disagree.
 {¶ 24} Pursuant to Civ.R. 56(C), a court shall render summary judgment if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is *Page 9 
entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 358-359,1992-Ohio-95.
 {¶ 25} In ruling on a motion for summary judgment, a court is not permitted to weigh evidence or choose among reasonable inferences.Adkins v. Chief Supermarket, Paulding App. No. 11-06-07, 2007-Ohio-772, at ¶ 8, citing Jacobs v. Racevskis (1995), 105 Ohio App.3d 1, 7. Rather, all reasonable inferences shall be resolved in favor of the non-moving party. Dupler v. Mansfield Journal Co. (1980), 64 Ohio St.2d 116,119-120.
 {¶ 26} Not only was the trial court's statement a correct statement of law, but we presume regularity in the trial court's proceedings. A general principal of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record. Werts v. Werts, Summit App. No. 23610, 2007-Ohio-4279. Here, the trial court's statement was not only a correct statement of the standard for summary judgment, but the trial court went on to apply that standard in analyzing the evidence before it.
 {¶ 27} Moreover, appellate review of summary judgment is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v. Scioto Cty. Bd. of *Page 10 Commrs. (1993), 87 Ohio App.3d 704, 711. Thus, we apply the same standard as the trial court and conduct an independent review without deference to the trial court's determination. Maust v. Bank OneColumbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown, at 711.
 {¶ 28} Appellants' second assignment of error is overruled.
 {¶ 29} Assignment of error one is no more than a blanket assertion by appellants that genuine issues of material fact exist in this case. Throughout appellants' brief, they reiterate that they submitted affidavits which create genuine issues of material fact or that, merely by virtue of bringing claims for fraud and nuisance, they are entitled to a jury trial. However, appellants fail to identify for the court what these alleged factual disputes are.
 {¶ 30} In Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, the Supreme Court of Ohio explicitly stated that when a court receives a properly presented motion for summary judgment, a non-moving party may not rely upon the mere allegations of its complaint, but, instead, must demonstrate that a material issue of fact exists by directing the court's attention to evidentiary materials of the type listed in Civ.R. 56(C). Appellants' brief fails to cite to where in the record or what specific portions of appellants' affidavits support their assertion that genuine issues of material fact remain. For example, at page 43 of their brief, appellants state that "[t]here are many genuine issues of material fact as can be seen by the Affidavits submitted by the Plaintiffs-Appellants and their witnesses." At page 22 of their brief, appellants state that "[i]n their Affidavits, the Plaintiffs-Appellants and their witnesses disputed the `facts' as set forth in the Defendants' Motion for Summary Judgment along with the Affidavits submitted with their Motions." These types of blanket statements add nothing to the analysis required by a court in addressing a *Page 11 
motion for summary judgment. An appellate court is not required to comb through the record on appeal to search for error when appellants have failed to specify what factual issues allegedly remain for trial.Red Hotz, Inc. v. Liquor Control Comm. (Aug. 17, 1993), Franklin App. No. 93AP-87; App.R. 12(A). The first assignment of error is not well-taken.
 {¶ 31} In their third assignment of error, appellants argue that the trial court improperly discounted the affidavit of appellants' expert witness, Dr. Angelo Campanella. The trial court determined that the expert's opinion that, the only objective published noise standard was not applicable to East Bank was merely his personal opinion, and not one of scientific or technical expertise. The trial court correctly performed its function under Evid.R. 702 and the Daubert v. Merrell DowPharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct 2786 line of cases regarding the need to ensure that scientific testimony is reliable.
 {¶ 32} The only published noise isolation standard for multifamily dwellings was a level of 50, and Unit 305 admittedly met that standard. As such, Mr. Campanella's personal opinion that some higher unpublished and unknown standard applied to "luxury" condominiums was properly excluded by the trial court as lacking in any reliable scientific, technical, or other specialized basis.
 {¶ 33} As discussed in connection with assignment of error two, the trial court did apply the appropriate summary judgment standard and construed the facts in favor of appellants. However, the trial court was not required to consider unreliable or inadmissible evidence. The third assignment of error is not well-taken.
 {¶ 34} In their fifth assignment of error, appellants take issue with the trial court's ruling that their claims of fraud do not survive summary judgment. Again, appellants *Page 12 
merely assert that summary judgment is inappropriate for fraud allegations, and that the trial court "misconstrued the statements of the representatives of the Defendants in this case," and that summary judgment is inappropriate. (Appellants' brief, at 37.)
 {¶ 35} Based on our review of the record, we agree with the trial court that the fraud claims fail. The parties do dispute whether the representations were made, however that is not the basis for summary judgment.
 {¶ 36} In order to prevail on a claim of fraud, there must be a (1) representation (actual or implied) or, where there is a duty to disclose concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance upon the representation or concealment; and (6) a resulting injury proximately caused by the reliance. Williams v. Aetna Fin. Co. (1998), 83 Ohio St.3d 464, 475;Austin v. Kluczarov Constr., Medina App. No. 02CA0103-M, 2004-Ohio-593, at ¶ 30.
 {¶ 37} Patrick Tonti was never present when the alleged misrepresentations were made. According to the Tontis' depositions, he knew nothing of the purchase of Unit 305 until he was told of the surprise months after the purchase had been made and the deed granted to 5745 Newbank Circle, Inc. Also, there is no evidence that Wick Tonti individually suffered any injury based upon statements that one could not hear noise outside the unit, except from the hallway.
 {¶ 38} In addition, there is nothing in the purchase agreement that refers to noise levels in any way. Yet, that agreement was specifically negotiated by experienced real estate broker Wick Tonti. Appellants cannot show materiality where the *Page 13 
misrepresentation complained of is ordinary household noise in a multi-unit condominium, and the victims' agent negotiated a purchase agreement that was silent as to noise levels in the unit.
 {¶ 39} The trial court construed the statements made by Mr. Howe to fall within the permissible "puffing" category of sales transactions. Even if we were to disagree, and find the representations material, there is another reason why the fraud claims fail.
 {¶ 40} Here, in order to prove damages, appellants have to show that the noise levels in Unit 305 are unreasonable or excessive in order to establish the need for remedial measures to dampen the sound. As discussed above, appellants' expert does not opine as to whether the results of his sound test establish a violation of any industry standard. Rather, Mr. Campanella's testimony at his deposition was that the impact isolation absorption from Unit 405 to Unit 305 exceeds the only published industry standard. Mr. Campanella stated that he prefers not to live in a multifamily residence because his personal opinion is that such dwellings are too noisy for his taste. Mr. Campanella's personal preferences cannot form the basis for the alleged need to lower the ceiling height of Unit 305 and to insert sound dampening material.
 {¶ 41} Appellants have failed to establish the damages element of their fraud claim and, accordingly, the trial court did not err in granting summary judgment on these claims. The fifth assignment of error is not well-taken.
 {¶ 42} In their sixth assignment of error, appellants contend that the trial court erred in dismissing Mary and Patrick Tontis' fraud and contract claims on the basis that they are not real parties in interest. Appellants claim that they have standing to bring their claims based on their status as shareholders in 5745 Newbank Circle, Inc. and their *Page 14 
status as third-party beneficiaries of the purchase agreement entered into by Wick Tonti. Regardless of their purported status as third-party beneficiaries, the fraud claims fail for the reasons discussed in connection with assignment of error five. The breach of contract claim for other defects was dismissed without prejudice, leaving only the claim for breach of implied duty in contract regarding noise. The Tontis base this claim on provisions in the Declaration and Bylaws for East Bank. The provisions relied on by the Tontis are one that prohibits offensive activities that may unreasonably disturb any occupant, and one that prohibits discrimination against any unit owner in favor of another.
 {¶ 43} The alleged offensive activities that the Tontis complain of are the everyday living activities in which Dr. Miller and her mother engage when they are using the wood flooring in Unit 405. According to Dr. Miller's affidavit, she had hardwood flooring installed in her condominium in order to accommodate her infirm elderly mother who was largely confined to a wheelchair. Carpeted floors made it too difficult for Dr. Miller's mother to operate her wheelchair. People who need wheelchairs may need reasonable accommodations like hardwood flooring too.
 {¶ 44} As the trial court pointed out, appellants' subjective unhappiness with noise levels from two quiet individuals who elected, for good reason, to install hardwood flooring, does not justify a full jury trial. As a matter of law, no reasonable jury could find the contract or tort violations alleged here.
 {¶ 45} The trial court noted:
 * * * If the law were otherwise it would, practically speaking, guarantee that every resident of any apartment, dormitory, or condominium building could, if they chose, gin-up a lawsuit against their neighbor every time the phone rang, or someone moved a chair or dropped a pan into the dishwasher, or *Page 15 
played classical music on their piano at 7:30 on a Sunday morning. Children and teenagers would, practically speaking, be barred from multi-family dwellings. Life would become even more vexing in multi-resident settings because, under plaintiffs' strained view, such buildings would be litigation factories rather than places of repose.
(January 12, 2007 Journal Entry Granting Defendant Miller's Motion for Summary Judgment, at 10.)
 {¶ 46} The sixth assignment of error is not well-taken.
 {¶ 47} The seventh assignment of error is simply a reiteration of appellants' contention that genuine issues of material fact remain, and that the trial court applied the wrong standard in granting summary judgment. For the reasons discussed in connection with the previous assignments of error, the seventh assignment of error is not well-taken.
 {¶ 48} Based on the foregoing, appellants' seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 BROWN and McGRATH, JJ., concur. *Page 1