[Cite as *Mitchell v. Geiger*, 2025-Ohio-4808.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Porter Mitchell, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 24AP-366 |
| v. | : | (C.P.C. No. 18DR-3751) |
| Shawna Geiger, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on October 21, 2025

**On brief:** *Porter Mitchell*, pro se. **Argued:** *Porter Mitchell.*

**On brief:** *Shawna Geiger*, pro se. **Argued:** *Shawna Geiger.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

BEATTY BLUNT, J.

{¶ 1}   Plaintiff-appellant, Porter Mitchell ("Father"), appeals from the decision and entry of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting his motion to terminate shared parenting plan and awarding sole legal custody of the minor child to defendant-appellee, Shawna Geiger ("Mother").  For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.

**I.  Facts and Procedural History**

{¶ 2}   The within matter arises out of the parties' previous marriage, subsequent divorce, and protracted and ongoing disputes pertaining to the parties' shared parenting of the minor child at issue, S.M. (DOB November 5, 2017).  The parties were divorced on September 24, 2019 pursuant to an agreed judgment entry and divorce decree which

incorporated the Parents' Plan for Shared Parenting. (Sept. 19, 2024 Agreed Jgmt. Entry Divorce Decree at 3.)

{¶ 3} The record indicates that less than two months later the parties were already at odds with each other concerning the shared parenting arrangements, as evinced by Mother's first motion to terminate shared parenting and designate her as sole legal custodian of the minor child, filed on November 6, 2019. Indeed, as the trial court observed in its March 14, 2024 judgment entry[1] on multiple motions, "[t]his case has been highly contested and there have been a least two dozen motions filed since the parties divorced on or about September 24, 2019." (Mar. 14, 2024 Jgmt. Entry at 13.)

{¶ 4} Relevant to this appeal, on October 14, 2022, Father filed a motion to terminate the shared parenting plan. The trial court dismissed that motion on December 5, 2022 for failure to prosecute when Father failed to appear at the December 1, 2022 hearing on the motion. (*See* Dec. 5, 2022 Mag.'s Decision & Entry.)

{¶ 5} On December 13, 2022, Father filed another motion to terminate the shared parenting plan. Mother filed her own motion to terminate the shared parenting plan on February 3, 2023, but she voluntarily dismissed that motion at the March 8, 2024 hearing conducted by the trial court to address multiple motions filed by the parties, including cross-motions for contempt pertaining to alleged violations of parenting time filed by the parties against each other. At the March 8, 2024 hearing, the trial court ordered that Father's December 13, 2022 motion to terminate the shared parenting plan be reset for further hearing as it had apparently been overlooked by the trial court when preparing for the March 8, 2024 hearing. (*See* Mar. 14, 2024 Jgmt. Entry at 2-3.)

{¶ 6} On May 15, 2024, a hearing on Father's December 13, 2022 motion to terminate the shared parenting plan was held at which both Father and Mother appeared pro se.

{¶ 7} On May 16, 2024, the trial court issued its decision and entry granting Father's motion to terminate the shared parenting plan and awarding legal custody of the minor child to Mother. (May 16, 2024 Jgmt. Entry on Pl's Mot. to Terminate Shared Parenting Plan.)

---

[1] This judgment entry was issued following a hearing on March 8, 2024 on multiple motions filed by the parties which are not directly relevant to the instant appeal.

{¶ 8} On June 11, 2024, appellant timely filed a notice of appeal, which is now before the court.

## II. Assignments of Error

{¶ 9} Appellant assigns the following errors for our review:

1. The trial court erred in failing to conduct a proper trial after resetting the case for trial, thereby denying Appellant due process.

2. The trial court erred in awarding sole custody to Appellee despite her contempt findings and failure to purge said contempt.

3. The trial court exhibited bias and failed to properly apply the statutory best-interest analysis under R.C. § 3109.04.

## III. Discussion

{¶ 10} Because we find it dispositive of this appeal, we begin by addressing Father's third assignment error. In his third assignment of error, Father asserts the trial court exhibited bias and failed to properly apply the statutory best interest of the child analysis under R.C. 3109.04. While we do not find the trial court exhibited bias, we agree the trial court failed to conduct the proper best interest analysis in terminating the parties' shared parenting plan, as explained below.

{¶ 11} "When reviewing the propriety of a trial court's determination in a domestic relations case, an abuse of discretion standard is used." *Taylor v. Taylor*, 2018-Ohio-2530, ¶ 5 (10th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). This standard has been applied in cases concerning orders relating to alimony, the division of marital property, child custody, and child support. (Internal citations omitted.) *Id.* It is well-settled that "[t]rial courts have broad discretion in determining custody issues, and an abuse of discretion standard of review applies to appeals of custody matters." *Meyer v. Wile*, 2023-Ohio-4624, ¶ 10 (10th Dist.), citing *Baze-Sif v. Sif*, 2016-Ohio-29 (10th Dist.).

{¶ 12} A trial court abuses its discretion when it exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. The term abuse of discretion, " 'commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, implies *not merely error of judgment*, but perversity of will, passion, prejudice,

partiality, or moral delinquency.' " (Emphasis sic.) *Id.*, quoting *Black's Law Dictionary* 11 (2d Ed. 1910). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Deblase v. Ohio Ballot Bd.*, 2023-Ohio-1823, ¶ 27.

{¶ 13} Accordingly, under the abuse of discretion standard discussed above, "a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." *Taylor*, 2018-Ohio-2530 at ¶ 5, quoting *Booth* at 144. Because this court is not a trier of fact, our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *See, e.g., Miller v. Miller*, 2021-Ohio-4573, ¶ 15 (10th Dist.); *Tennant v. Martin-Auer*, 2010-Ohio-3489, ¶ 16 (5th Dist.).

{¶ 14} Turning to the instant matter and Father's motion to terminate shared parenting, R.C. 3109.04(E)(2)(c) provides, in pertinent part, "[t]he court may terminate a prior final shared parenting decree that includes a shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children[.]" R.C. 3109.04(D)(1)(a)(i) applies to shared parenting plans that are jointly filed, as was the plan in the instant matter.

{¶ 15} The Supreme Court of Ohio has found that pursuant to the language of R.C. 3109.04, "a trial court need consider only the best interest of the child when deciding whether to terminate a shared-parenting plan and which parent to designate as the residential and custodial parent of a minor child" and a change in circumstances finding is not required. *Bruns v. Green*, 2020-Ohio-4787, ¶ 1, 21. Thus, pursuant to R.C. 3109.04(E)(2)(c), once one or both of the parties move for a termination of a shared parenting plan and decree that was jointly filed, the court may terminate such plan and decree without making a finding of change in circumstances but must nevertheless conduct a best interest analysis. *See Bruns* at ¶ 21.

{¶ 16} In turn, in the event the court terminates a shared-parenting decree pursuant to R.C. 3109.04(E)(2)(c), R.C. 3109.04(E)(2)(d) then applies. R.C. 3109.04(E)(2)(d) provides:

> Upon the termination of a prior final shared parenting decree
> under division (E)(2)(c) of this section, the court shall proceed

and issue a modified decree for the allocation of parental rights and responsibilities for the care of the children under the standards applicable under divisions (A), (B), and (C) of this section as if no decree for shared parenting had been granted and as if no request for shared parenting ever had been made.

Thus, the plain language of R.C. 3109.04(E)(2)(d) requires that the trial court allocate parental rights and responsibilities under R.C. 3109.04(A) through (C) "as if there had never been a shared-parenting decree and as if neither party had ever requested shared parenting." *Bruns* at ¶ 14. This means that the court must allocate residential and legal custody to one of the parties based on its determination that doing so is in the best interest of the child. *See id.*, citing R.C. 3109.04(A)(1).

{¶ 17} Under R.C. 3109.04, in determining the best interest of the child, the trial court must "consider all relevant factors, including, but not limited to, those factors set forth in R.C. 3109.04(F)(1)." *Meyer*, 2023-Ohio-4624, at ¶ 26 (10th Dist.), quoting *Wilk v. Wilk*, 2011-Ohio-5273, ¶ 10 (8th Dist.). The best interest factors enumerated in R.C. 3109.04(F)(1) include:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that

parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

R.C. 3109.04(F)(1)(a) through (j.)

{¶ 18} Notwithstanding the foregoing, in the absence of a motion made pursuant to Civ.R. 52 requesting findings of fact and conclusions of law, a trial court is not required to make specific findings pertaining to the best interest factors in the judgment entry. *Id.* at ¶ 27, citing *Wilk* at ¶ 10. Furthermore, "[a]n appellate court will presume regularity in the trial, 'unless the contrary is made to appear in the record.' " *Id.*, quoting *Tonti v. E. Bank Condominiums, L.L.C.*, 2007-Ohio-6779, ¶ 26 (10th Dist.). Therefore, we will presume that the trial court considered the R.C. 3109.04(F) factors "unless there is reason to believe the trial court did not consider those factors." *Id.*, quoting *Wilk* at ¶ 10. Thus, "[i]f the record

does not support the conclusion that all relevant factors were considered, the trial court has not complied with R.C. 3109.04(F)(1)." *Id.* at ¶ 28, citing *Brammer v. Meachem*, 2011-Ohio-519 (3rd Dist.).

{¶ 19} Here, neither of the parties filed a motion pursuant to Civ.R. 52 requesting findings of fact and conclusions of law; therefore, the trial court was not required to make specific findings in the judgment entry regarding its consideration of the best interest factors for either the termination of the shared parenting plan or its designation of Mother as sole legal custodian of the child. Nevertheless, a review of the trial court's judgment entry as it pertains to the termination of the shared parenting plan shows that the trial court does not even mention the best interest factors. Instead, the court states as follows:

> Up to this point, the Court had held out hope that the parties could work through their issues to the extent that they would be able to coparent effectively. However, is has become abundantly clear through the repeated filing of motions to change and/or terminate the shared parenting plan and motions for contempt against one another, as well as the persistent animosity between the parties, that the parties are unable to coparent with one another. This hostility has been evident even in the proceedings before this Court.
>
> Therefore, the Court finds that Plaintiff's Motion to Terminate Shared Parenting Plan to be well-taken. The Court grants that [sic] Plaintiff's motion in part to the extent that the Shared Parenting Plan and Shared Parenting Decree filed on September 24, 2019 are hereby terminated. Next the Court examines which party shall be designated the legal custodian.

(May 16, 2024 Jgmt. Entry at 2.) Thus, the judgment entry itself belies any consideration by the trial court of the best interest factors.

{¶ 20} Furthermore, even if we could infer from the judgment entry that *some* of the best interest factors were considered by the trial court in determining whether terminating the shared parenting plan was in the best interest of the child, we find that is insufficient. As stated above, under R.C. 3109.04, in determining the best interest of the child, the trial court must "consider *all* relevant factors, *including, but not limited* to, those factors set forth in R.C. 3109.04(F)(1)." (Emphasis added.) *Meyer*, 2023-Ohio-4624 at ¶ 26 (10th Dist.), quoting *Wilk*, at ¶ 10 (8th Dist.). "If the record does not support the conclusion that *all relevant factors* were considered, the trial court has not complied with R.C.

3109.04(F)(1)." (Emphasis added.) *Id.* at ¶ 28, citing *Brammer v. Meachem*, 2011-Ohio-519 (8th Dist.).

{¶ 21} Nor does the transcript of the May 15, 2024 hearing on Father's motion to terminated shared parenting indicate any consideration of the best interest factors. Indeed, the transcript shows an essentially summary granting of the motion, to wit:

> THE COURT: So what we'll do today in response to your motion -- we already terminated the shared parenting plan, didn't we?
>
> MR. MITCHELL: No.
>
> THE COURT: Well, we're definitely terminating that. This -- this is not a shared parenting arrangement here. They don't cooperate. They cannot share parent cooperatively here. So we will terminate that based on your motion, everything you stated today.
>
> So we're going to grant your motion in part and then add some things to it. That's the motion I have here today, is to terminate the shared parenting.

(May 15, 2024 Tr. at 29.) Similarly, later in the hearing, the trial court states simply, "[s]o consistent with his motion, I am terminating your shared parenting." *Id.* at 69. Thus, neither the judgment entry nor the record permits us to presume that the trial court considered the R.C. 3109.04(F) factors as is required prior to terminating the shared parenting plan. We find this is an abuse of discretion and reversible error.

{¶ 22} In short, the trial court was required to conduct a complete best interest of the child analysis in considering the termination of the shared parenting plan. Neither the trial court's judgment entry nor the record (via the transcript) indicates that all of the relevant best interest factors were considered before making that determination as is required. Although we cannot say that the trial court exhibited bias toward Father per se, the failure to conduct the proper best interest analysis prior to terminating the shared parenting plan was an abuse of discretion and reversible error on the part of the trial court.

{¶ 23} Accordingly, based on the foregoing, Father's third assignment of error is sustained in part, and we find moot that part of Father's third assignment of error pertaining to the designation of one of the parents as sole legal custodian of the child.

{¶ 24} Further, our resolution of Father's third assignment of error requires reversal of the trial court's judgment and remand to the trial court so it may properly conduct the best interest analysis under R.C. 3109.04 for considering termination of the shared parenting plan and, if the plan is so terminated, for designating one of the parents as the sole legal custodian of the child. Accordingly, Father's first and second assignments of error are moot, and we need not address them. *Croce v. Ohio State Univ. Bd. of Trustees*, 2024-Ohio-2138, ¶ 67 (10th Dist.), citing *State v. Gideon*, 2020-Ohio-5635, ¶ 26 ("an assignment of error is moot when an appellant presents issues that are no longer live as a result of some other decision rendered by the appellate court"), and App.R. 12(A)(1)(c) (an appellate court must decide each assignment of error "[u]nless an assignment of error is made moot by a ruling on another assignment of error").

## IV. Disposition

{¶ 25} Based on the foregoing, the trial court abused its discretion in terminating the parties' shared parenting plan and in designating Mother as the sole legal custodian of the child without first conducting the proper best interest analysis required. Having sustained in part Father's third assignment of error, rendering moot his first and second assignments of error, we reverse the decision of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter to that court for further proceedings consistent with this decision.

*Judgment reversed;*
*cause remanded.*

EDELSTEIN, J., concurs.
DORRIAN, J. dissents

---

DORRIAN, J., dissenting.

{¶ 26} I respectfully dissent.

{¶ 27} I dissent from the majority's conclusion that the judgment does not permit us to presume that the trial court considered the R.C. 3109.04(F) best interest factors in terminating the shared parenting plan. *See* Majority at ¶ 20-22. I begin by noting that it was Father who asked that the shared parenting plan be terminated. The court granted his request. Furthermore, the majority quotes from the bottom half of the first paragraph and

the second paragraph on page two of the judgment. *See* Majority at ¶ 19. The majority is correct that those portions of the judgment do not specifically refer to R.C. 3109.04(F). However, in the paragraph immediately preceding the quoted paragraphs, the last sentence of page one states: "R.C. 3109.04(E)(2)(c) states in pertinent part, 'The court may terminate a prior final shared parenting decree that includes a shared parenting plan . . . upon the request of one or both of the parties or whenever it determines that shared parenting is not in the best interests of the children.' " (May 16, 2024 Jgmt. Entry at 1.) And in the paragraph immediately following the quoted paragraphs, the court specifically refers to "the best interest factors enumerated in R.C. §3109.04(F)(1)." (May 16, 2024 Jgmt. Entry at 2.) Therefore the judgment makes clear that the court was aware of its duty to consider the best interest factors.

{¶ 28} Most importantly, however, it is clear to me that the court considered several of the best interest factors in determining whether to terminate the shared parenting plan. It considered "[t]he wishes of the child's parents regarding the child's care" pursuant to R.C. 3109.04(F)(1)(a); "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights" pursuant to R.C. 3109.04(F)(1)(f); and "[w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court" pursuant to R.C. 3109.04(F)(1)(i) when it stated:

> At the hearing on May 15, 2024, Plaintiff asserted that the parties were still having difficulties with coparenting. He opined that Defendant was not abiding by the Court's orders with regards to visitation. Defendant stated that Plaintiff was still picking up and dropping off the minor child late to the parenting time exchanges. Both parties expressed their frustration with the parenting time, each other, and the current custodial arrangements. The parties' arguments were many of the same disputes that this Court has previously heard from the parties on numerous occasions. The Court also notes that both parties have filed motions to modify and/or terminate the parties' shared parenting in the past. Up to this point, the Court had held out hope that the parties could work through their issues to the extent that they would be able to coparent effectively. However, it has become abundantly clear through the repeated filing of motions to change and/or terminate the shared parenting plan and motions for contempt against one another, as well as the

persistent animosity between the parties, that the parties are unable to coparent with one another. This hostility has been evident even in the proceedings before this Court.

(May 16, 2024 Jgmt. Entry at 2.)

{¶ 29} Furthermore, the court stated at the hearing:

So what we'll do today in response to your motion -- we already terminated the shared parenting plan, didn't we?

MR. MITCHELL: No.

THE COURT: Well, we're definitely terminating that. This -- this is not a shared parenting arrangement here. They don't cooperate. They cannot share parent cooperatively here. So we will terminate that based on your motion, everything you stated today.

So we're going to grant your motion in part and then add some things to it. That's the motion I have here today, is to terminate the shared parenting.

(May 15, 2024 Tr. at 29.)

{¶ 30} I also do not find the contrary is made to appear in the entire record of this case. In other words, the trial court's decision to terminate is supported by competent, credible evidence. Accordingly, I would presume regularity and find that the trial court did not abuse its discretion in terminating the shared parenting plan.

{¶ 31} Because I would find the trial court did not abuse its discretion with regard to terminating the shared parenting plan, I would also consider Father's arguments regarding analysis of the best interest factors when designating Mother as sole legal custodian. The majority found this question to be moot. (Majority at ¶ 23.) As noted above, the last paragraph on page two of the judgment continuing to page three refers to the best interest factors. It states:

The Court has considered the information presented at the hearing on May 15, 2024, and the information presented at the hearing on March 8, 2024. The Court has also weighed the best interest factors enumerated in R.C. § 3109.04(F)(1), which include, but are not limited to, the wishes of the child's parents; the child's wishes as expressed through the Guardian ad Litem

at the hearing on March 8, 2024[2]; the child's interaction and interrelationships with her family members; the child's adjustment to home, school, and community; the mental and physical health of all persons involved in the situation; the parent more likely to honor and facilitate Court approved parenting time rights or visitation and companionship rights; whether the residential parent has continuously and willfully denied the other parent's right to parenting time; whether either parent has established or plans to establish a residence outside of the state; the ability of both parents to cooperate and make decisions jointly with respect to the child; and the recommendation of the Guardian ad Litem.

(May 16, 2024 Jgmt. Entry at 2-3.) Again, the judgment makes clear that the court was aware of its duty to consider the best interest factors.

{¶ 32} The May 15, 2024 hearing transcript is 95 pages long. It reflects for the most part Father expressing extreme frustration, sometimes with curse words[3], at Mother and the court regarding (1) Mother's non-compliance with drop-off times and locations; (2) Mother's non-compliance with scheduled phone calls with Father; and (3) the trial court's explanation that because Mother was the residential parent she could move to Gallipolis or Chillicothe pursuant to the existing shared parenting plan. Father also expressed that (1) he wanted more time with his daughter in the summer months; (2) he wanted specific times to talk with his daughter during the week; and (3) he wanted access to school records and to be named as a parent at school.

{¶ 33} Once again, it is clear to me that the court considered several of the best interest factors in determining whether to terminate the shared parenting plan. As noted above, it is clear the court considered "[t]he wishes of the child's parents regarding the child's care" pursuant to R.C. 3109.04(F)(1)(a); "[t]he parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights" pursuant to R.C. 3109.04(F)(1)(f); and "[w]hether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court" pursuant to R.C. 3109.04(F)(1)(i). The transcript also makes it clear to me that the court considered

---

[2] The transcript of the March 8, 2024 hearing is not in the record.

[3] The transcript from the hearing also contains numerous notations of "simultaneous crosstalk" throughout the record.

"[t]he child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest" pursuant to R.C. 3109.04(F)(1)(c); and "the child's adjustment to the child's home, school, and community" pursuant to R.C. 3109.04(F)(1)(d). The transcript reveals an excerpt of Mother's testimony as follows:

> And yes, she has to go to summer school, and they're going to let her do the little going across the stage or do as far as what it is, but she has to go to summer school because her last quarter she did not pick up the right amount of stuff because of the back and forth between our households.
>
> When she's at my home, she's going to school and we do appointments. It's like business basically. Like, we're on top of our game. We're doing her school stuff and whatever needs to be done first, school, homework, stuff like that.
>
> So when she goes to her dad's on the weekends, it's play, play, play time, and she's not getting in all the extra work that we have to do to make sure she knows sight words and her numbers and all that stuff. So she's having -- she has to go to summer school this year.
>
> . . .
>
> I have to have a schedule for her summer vacation. I sent him the schedule. He didn't respond anything other than he didn't like what I was doing which I gave him two week blocks of uninterrupted parenting time so we didn't have to incorporate a weekend -- or a two week vacation time within it, and it's uninterrupted.
>
> He wasn't happy with that. What it is, is he just wants to keep on and keep on and keep on so we have to keep coming here when I'm trying to do everything possible for him to be okay with the situation because at some point when he brings her back, she cries because she wants to go back and play because she knows when she's home she has to go to school.
>
> We don't get the chance to just, oh, hey, enjoy our week home or nothing like that because whenever she's with me, I have to make sure everything is scheduled within that time frame.

> So when she goes with him, I don't have to say, Hey, you need to bring her back because she got an appointment on such and such a day or we have to do this on such and such a day.
>
> Do you know how upsetting it is to her that the weekends she goes with him she misses all her little friends' birthday parties? That's not fun for her because she cries and says, Why do I even have to go? But I'm like, it's your dad's time, you got to go with your dad.

(May 15, 2024 Tr. at 8-9, 10-11.)

{¶ 34} This excerpt also prompts me to conclude that I do not find the contrary is made to appear in the entire record of this case. In other words, the trial court's decision to name Mother sole legal custodian and residential parent is supported by competent, credible evidence. Accordingly, I would presume regularity and find that the trial court did not abuse its discretion in appointing Mother sole legal custodian and residential parent.

{¶ 35} For the above stated reasons, I dissent from the majority and would overrule the third assignment of error in its entirety. I would then consider the first and second assignments of error.